## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| FITZPATRICK INTERNATIONAL LIMITED, | § § § | |
| Plaintiff, | § | Case No. _____ |
| v. | § § | |
| THE REPUBLIC OF EQUATORIAL GUINEA, | § § § | |
| Defendant. | § | |

## AFFIDAVIT OF REGINALD R. SMITH

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared Reginald R. Smith, known to me to be the person whose name is subscribed below, and after being duly sworn, upon oath says:

My name is Reginald R. Smith and I am over 21 years of age. I am qualified and competent to make this Affidavit. I am a licensed attorney in Texas and I am admitted to practice before this Court.

Attached to this Affidavit are true and correct copies of the following documents:

1. THE CONTRACT FOR THE CONSTRUCTION OF THE AIRPORT-ELA NGUEMA HIGHWAY, dated February 17, 2004, between Fitzpatrick Equatorial Guinea Ltd. and The Republic of Equatorial Guinea (the "Contract"), attached to this Affidavit at pp. 1-36;

1

2.     The arbitration agreement, Article 40 of the Contract, attached to this Affidavit at p.13;

3.     A certified translation of Article 40, attached to this Affidavit at p. 37-38;

4.     The ICC "Terms of Reference" dated March 21, 2008, attached to this Affidavit at pp. 39-64;

5.     The ICC "Award on Preliminary Issues" dated May 14, 2009, attached to this Affidavit at pp. 65-113;

6.     The ICC "Final Award" dated December 23, 2011, attached to this Affidavit at pp. 114-195; and

7.     The assignment of the ICC "Final Award" by Fitzpatrick Equatorial Guinea Ltd. to plaintiff, Fitzpatrick International Limited, dated January 7, 2012, attached to this Affidavit at pp. 196-200.


FURTHER AFFIANT SAYETH NOT.

_____
Reginald R. Smith


SUBSCRIBED AND SWORN to before me and given under my hand and seal this office on the 24th day of April, 2012.

_____
Notary Public in and for the
State of Texas
My commission expires: _____

JEFFERIE KMIEC
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 15, 2012

2



REPUBLICA DE GUINEA ECUATORIAL

# CONTRATO PARA LA CONSTRUCCION DE LA AUTOVIA AEROPUERTO-ELA NGUEMA

**EMPRESA:**    FITZPATRICK EQUATORIAL GUINEA LTD

**MONTO:**    92.000.000.000 F. Cefas.

**PLAZO:**    36 MESES

CONTRATO PARA LA CONSTRUCCION DE LA AUTOVIA AEROPUERTO-ELA NGUEMA.

REUNIDOS:

En la Ciudad de Malabo, Provincia de Bioko Norte, a Dieciséis días de Febrero del año 2004

De una parte el Gobierno de la República de Guinea Ecuatorial, representado por:

- *El Ministro de Estado de Infraestructuras Y Bosques*
  *Presidente de GEPROJETS*

De aquí en adelante denominado como "el cliente o el Gobierno"

De otra parte:

*La Empresa FITZPATRICK EQUATORIAL GUINEA LTD representada por Don DAVID DOUGLAS BAPLE con Pasaporte nº 093097884 en su calidad de Director General, con sede social en Malabo, registrada en Malabo con Nº 211.*

De aquí en adelante denominado como "el Contratista o la Empresa"

Ambos con capacidad jurídica suficiente, la cual se reconoce entre las partes, acuerdan lo siguiente:

CAPITULO I.- DISPOSICIONES GENERALES

Artículo 1.- El presente contrato, tiene por objeto: *La Construcción de la Autovía Aeropuerto-Ela Nguema. A partir del Edificio de la Terminal del Aeropuerto de Malabo hasta la Rotonda de la carretera de RIABA a ELA NGUEMA. Incluye lo siguiente:*

- *La construcción de un puente de tipo Arco sobre el Río Timbabé.*
- *Las carreteras de servicio paralelas.*
- *Todas las cunetas de alcantarillado en el trayecto de la autovía.*
- *Todos los conductos de agua subterráneos por debajo de la autovía para canalizar los diversos ríos que cruzan la carretera.*
- *Los conductos que cruzan la autovía para la instalación de electricidad, cables de teléfono y agua potable.*
- *Señales de circulación en los puntos de la carretera donde sea necesario.*
- *Una barrera de peaje en la autovía.*
- *Postes de luz en el trayecto de la carretera.*
- *Semáforos del tipo que existen en Inglaterra en los puntos de la carretera donde sean necesarios.*
- *Construcción de aceras de 4m de anchura y pavimento en ambos lados de la carretera.*
- *Creación de espacios verdes en ambos lados de la carretera.*

1

Artículo 2.- De conformidad con el presupuesto estimativo y el cuadro de precios unitarios, el costo de las obras queda fijado *en NOVENTA Y DOS MIL MILLONES (92.000.000.000) F.CFA. SIN ICNI, al cambio de 1EURO=655.957 F. CEFAS.*

Los pagos se ejecutarán de acuerdo a los artículos 34, 35 y 36 del presente contrato.

Todos los bienes, equipos y maquinaria cuya utilización exclusiva será para la obra, gozarán del régimen de importación temporal y todos los materiales a utilizar estarán libres de los aranceles de importación. Concluidas las obras, si la empresa desease continuar con sus actividades, pagará todos los impuestos y Tasas al consumo. Del mismo modo si los vendieran o cedieran a terceros.

En cualquier caso la empresa se hará cargo de los gastos portuarios de transporte y varios.

## Artículo 3.- PIEZAS CONSTITUTIVAS DEL CONTARATO

Son piezas constitutivas del contrato, las siguientes:

1.- Documento de adjudicación de obra.
2.- Documento de Anexo de Contrato.
3.- Orden de Servicio.
4.- El mismo contrato.
5.- El pliego de las prescripciones generales y precisadas por las cláusulas particulares vigentes en la República de Guinea Ecuatorial (CCTP Y CCAG) adjuntados en la licitación.
6.- El cuadro de los precios unitarios.
7.- Los presupuestos.
8.- El planning de ejecución de las obras.
9.- Los planos del estudio realizado por BCEOM y SCET CAMEROUN (lote1, 2, 3, 4 y 5)
10.- Las especificaciones técnicas y particulares del proyecto (CCTP).
11.- La garantía Bancaria o seguro para el cumplimiento del Contrato.

## Artículo 4.- DENOMINACIÓN DE LOS REPRESENTANTES DEL GOBIERNO

A) A los efectos del presente contrato, se entenderá que el término "GOBIERNO" significará:

Toda autoridad cuya competencia, a los efectos de la realización de las obras sea reconocida mediante ley, y más específicamente la Dirección general de Obras Públicas, GEPROJETS y Organismos contratados por el Gobierno.

B) El término "INGENIERO "se refiere a los Técnicos mandatados por las instituciones indicadas en el párrafo anterior designados por la Dirección General de Obras Públicas y GEPROJETS, para el seguimiento de la realización de las obras.

2

**Artículo 5.- SELLO Y REGISTRO**

El registro del contrato así como la garantía y el seguro correrán a cargo del contratista, quien está obligado a ejecutarlo dentro del plazo de quince (15) días a partir de su firma y del pago del anticipo del 30%.

**Artículo 6.- CONTROL TÉCNICO Y CERTIFICACIONES DE OBRAS**

La Oficina Nacional de Planificación y Seguimiento de Proyectos de Guinea Ecuatorial "GEPROJETS" y el Ministerio de Infraestructuras y Bosques, se encargarán del control técnico y de la buena ejecución de las obras, objeto del presente contrato, siendo de su competencia la expedición de las correspondientes certificaciones de obras. El Gobierno podrá igualmente contratar uno o varios Gabinetes especializados para el control y supervisión de las mismas.

El Ministerio de Hacienda y Presupuestos, será el responsable del pago de las certificaciones que le sean remitidas por la Oficina Nacional de Planificación y Seguimiento de Proyectos de Guinea Ecuatorial "GEPROJETS" y el Ministerio de Infraestructuras y Bosques, en el marco del cumplimiento del presente contrato.

**Artículo 7.- UNIDAD DE MEDIDA Y MONEDA**

Las unidades de medidas utilizadas serán exclusivamente las del Sistema Internacional.

La moneda utilizada será el F.CFA

El contratista estará obligado a disponer de un número suficiente de personal cualificado, para el cumplimiento de su misión.

**Artículo 8.- GARANTIAS Y SEGUROS.**

El contratista deberá presentar al Gobierno una garantía bancaria suficiente siempre igual o superior al anticipo, al objeto de asegurar y garantizar el cumplimiento cabal de las obligaciones contractuales.

Dicha garantía bancaria será de carácter irrevocable, incondicional y pagable a la primera reclamación, si la empresa no ha respetado su compromiso contractual, debiendo hacerse en F.Cfas. y permanecer válida desde la fecha de su emisión hasta el vencimiento del periodo de responsabilidad por defecto, según lo establecido en el Contrato.

La garantía será suscrita en una entidad bancaria de primera línea, reconocida internacionalmente.

3

El contratista suscribirá además una póliza de seguros para cubrir los eventuales daños, riesgos, etc., que pudieran causarse a terceros, como consecuencia de las obras o sus modificaciones.

Dichas garantías o seguros no podrán ser anulados ni modificados sin previo aviso de la compañía de seguros al Gobierno y la aprobación del mismo.

## CAPITULO II.- EJECUCIÓN DE LOS TRABAJOS

### Artículo 9.- EJECUCIÓN DE LAS OBRAS

El contratista realizará las obras objeto del presente contrato de acuerdo con las normas generalmente reconocidas y aceptadas en la industria e ingeniería de construcción. A tal efecto el contratista fijará su residencia en el lugar que el Gobierno determine y las notificaciones relacionadas con el Contrato, le serán válidamente hechas en su domicilio.

### Artículo 10.- PERMANENCIA DEL CONTRATISTA EN EL LUGAR DE LA OBRA.

El contratista asegurará la permanencia durante las horas de trabajo de los cuadros dirigentes y el personal cualificado necesario para garantizar el normal funcionamiento de la empresa y el avance de los trabajos.

### Artículo 11.- PLAZO DE EJECUCIÓN

El plazo de ejecución de las obras se fija en 36 meses, entendiendo que la entrada en vigor se producirá a partir de la recepción del anticipo del 30% y después de la notificación de la Orden de Servicio de comienzo de las obras.

En este plazo están incluidos los periodos eventuales de paro de actividades durante los periodos de lluvia, así como los retrasos o interrupciones por cualquier causa, salvo de fuerza mayor.

### Artículo 12.- DOCUMENTOS QUE DEBE SUMINISTRAR EL CONTRATISTA.

1.- PROGRAMA DE EJECUCIÓN.- El programa de ejecución comportará en particular el detalle de los trabajos que se debe efectuar siguiendo las orientaciones de los planos de señalización y deberá ser entregado al ingeniero dentro de los treinta (30) días contados a partir de la firma del contrato o a partir de la notificación de la Orden de comienzo de las obras.

4

2.- ESTUDIO, PROYECTOS, PLANOS Y DIBUJOS DE EJECUCIÓN Y PRESUPUESTO DESCRIPTIVO PARTICULAR. El presente presupuesto incluye los estudios, proyectos, planos, dibujos y presupuestos descriptivos de las obras del mismo, así como su validación.

En caso de solicitar otras obras no programadas, los estudios podrán ser elaborados por el contratista siguiendo un proyecto de estudio a concertar entre el Gobierno y el contratista.

3.- EL SEGURO O UNA GRANTIA BANCARIA.- El Seguro o Garantía Bancaria de cumplimiento de las obligaciones, así como el Registro del Contrato, de conformidad con el Art.-3

Artículo 13.- INSTALACIÓN

Para los fines de este contrato y durante su vigencia, el Gobierno gestionará al contratista los terrenos necesarios para la instalación de su base logística.

Si al término del contrato, el contratista manifiesta su deseo de seguir ocupando los terrenos referidos en el párrafo anterior, o beneficiarse de derechos reconocidos en el presente contrato, el Gobierno podrá otorgarle la correspondiente concesión, previa solicitud en forma legal.
El contratista pondrá a disposición del ingeniero un cronograma de organización y un plano de instalación comportando los días de instalación y repliegue de las obras, oficinas, sala de reuniones, aéreas de almacenaje y los accesos a las obras.

Artículo 14.- SEÑALIZACIÓN DE LA OBRA

La Dirección General de Obras Públicas será la competente para establecer las normas de circulación en las vias afectadas por los trabajos de la obra.

Las señalizaciones de las obras se ajustarán a lo establecido por los reglamentos vigentes en la República de Guinea Ecuatorial sobre la materia.

En el lugar de las obras, queda prohibido fijar carteles públicos sin la autorización previa de la Dirección General de Infraestructuras. Quedan excluidos de esta prohibición, los carteles de la identificación.

En apoyo al programa de ejecución de los trabajos, el contratista anexará al mismo los esquemas de señalización adaptados a las diferentes fases de ejecución de las obras, siendo responsable de adaptación de dichos esquemas sobre el terreno conforme a las indicaciones, modificaciones o agregadas que pueda aportar el ingeniero antes o durante la ejecución de los trabajos.

Sin perjuicio de lo establecido en el artículo siguiente, el acceso a las obras será rigurosamente prohibido a toda persona ajena a la empresa, salvo los representantes del Gobierno y las personas que nominalmente estén autorizadas por éstos.

5

Artículo 15.- MANTENIMIENTO DE LA CIRCULACIÓN

El contratista asumirá bajo su responsabilidad los gastos ocasionados por las disposiciones necesarias para asegurar la circulación en los tramos de carreteras y calles afectadas por las obras durante la ejecución de las mismas, en condiciones equivalentes a las existencias en dichas vías antes del comienzo de las obras sin perjuicio de las limitaciones eventuales de velocidad, si se presenta el caso, acordadas por el Ministerio de Infraestructuras y Bosques, con relación al establecimiento de otras vías que aseguren la circulación en un único sentido.

Artículo 16.- EXTRACCIÓN DE MATERIALES DE CANTERA

El contratista abonará el canon correspondiente sobre la extracción de los materiales de cantera situados en el dominio público o privado del Estado, Municipio o Colectividades Rurales y que utilice a título del presente contrato, debiendo en todo caso respetar la normativa legal vigente en el País, en materia de explotación de cantera.

Artículo 17.- AFECTACIÓN DE PROPIEDADES

La responsabilidad derivada de la afectación por los trabajos de la obra propiedades privadas situadas en las áreas de influencia del proyecto, no será atribuida al contratista; sin embargo, éste estará obligado a identificar y poner en conocimiento del Gobierno antes del comienzo de las obras, las propiedades y demás bienes que queden afectados por el proyecto con vista a su evaluación y aprobación por la autoridad competente; caso contrario le serán imputadas las indemnizaciones correspondientes.

Artículo 18.- OBRAS PROVISIONALES

Las obras provisionales, pistas de servicio y excavaciones para establecer las necesarias vías de acceso a las obras, el establecimiento del albergue o depósito de materiales, así como emprestitos, serán a cargo del contratista, previo acuerdo del ingeniero sobre su implementación.

Si fuera necesario para el contratista utilizar carreteras privadas para el cumplimiento del presente contrato, el Gobierno asumirá los gastos de conservación en buen estado de las vías utilizadas por aquel durante la vigencia de los trabajos.

Artículo 19.- IMPLANTACIÓN

Los trabajos de replanteo y jalonamiento de las obras serán ejecutados bajo la dirección y el costo del contratista, previo acuerdo del ingeniero, antes del comienzo de los trabajos, excepto lo concerniente al desbrozamiento eventual.

6

Artículo 20.- CONTROLES Y PRUEBAS DE LOS MATERIALES

Las pruebas y controles sobre las obras serán efectuados por la Dirección General de Infraestructuras o por sus representantes legales.

El contratista asegurará el pago de los gastos ocasionados por la realización de todas las pruebas requeridas por las prescripciones técnicas y las reglas de arte sobre la calidad de la obra y de los materiales empleados en la misma, las cuales deberán ser efectuadas por el ingeniero en u la laboratorio instalado en Guinea Ecuatorial o en zona de la CEMAC.

Todas las pruebas deberán efectuarse en un tiempo límite que permita un avance progresivo de las obras conforme a lo establecido en el cuadro del programa de ejecución referido en el artículo 12 del presente contrato.

El ingeniero podrá efectuar además, pruebas y controles suplementarios que estime necesarios a cargo del Gobierno, las cuales al contratista en el caso de revelar errores de fábrica o de ejecución imputables al mismo, a verificar a su vez pruebas complementarias después y rectificar o corregir las obras defectuosas.

Artículo 21.- LIMPIEZA DE OBRA

El plazo de recogida de los materiales, instalaciones, materiales no empleados y desperdicios de toda clase, así como la reparación de los lugares utilizados por el proyecto se fija en treinta (30) días a partir de la recepción provisional de las obras.

Artículo 22.- TRABAJOS DE NOCHE

La ejecución de los trabajos e períodos nocturnos estará subordinada a la autorización del Gobierno.

En todo caso, no será precisa dicha autorización, si el contratista tome las disposiciones pertinentes para tener convenientemente el alumbrado en el lugar del trabajo, y si la demanda del trabajo ha sido hecha suficientemente con antelación para que el ingeniero pueda asegurar el control de los trabajos.

La forma del alumbrado será sometida a la aprobación del ingeniero.

Queda totalmente prohibida la instalación en los lugares de trabajo de alumbrado en color alineado que pueda crear confusión con las instalaciones de balizaje propias de aeródromos.

Artículo 23.- SUGESTIONES DE EJECUCIÓN

El contratista no puede alegar, para eludir sus obligaciones contraídas en virtud del presente contrato, ni para formular alguna reclamación, cuestiones o causas que puedan derivarse:

7

- El estado de los lugares, así como las condiciones de acceso y de trabajo.
- La presencia o proximidad en los contornos de su obra, de otras realizaciones para y por cuenta del Gobierno.

## Artículo 24.- CASOS DE FUERZA MAYOR

Se entenderá causa de fuerza mayor, las originadas por guerras, terremotos y las de la misma naturaleza, catástrofes naturales, insurrección o cualquier cause que imposibilite la ejecución de las obras.

## Artículo 25.- TRABAJOS EN LA ADMINISTRACIÓN

En el caso de que el Gobierno solicitara del contratista la ejecución de obras no incluidas e el presente contrato, éstas serán objeto de un contrato adicional negociado, y suscrito entre las dos partes.

## Artículo 26.- MODIFICACIONES DE IMPORTANCIA EN LA EJECUCION

El contratista no podrá alterar, modificar, ni introducir cambios sustanciales alguno y la naturaleza de las obras del presente contrato sin la previa autorización del Gobierno.

## Artículo 27.- BASES DE PRECIOS

Los precios establecidos en el presente Contrato tal como quedan definidos en el artículo 3 anterior quedan sujetos a las condiciones del mes de Febrero 2004. Los precios establecidos en el presente Contrato son fijos y no revisables.

## Artículo 28.- MANO DE OBRA

El contratista está obligado a reclutar a la mano de obra Nacional o Local para los puestos que no necesite personal expatriado cualificado.

Para cada puesto en que se necesite personal cualificado expatriado, colocará también a un nacional apto para asimilar paulatinamente las técnicas necesarias y adquirir la transferencia de tecnologías.

Antes de reclutar a un expatriado, se solicitará tal autorización de GEPROJETS, a los efectos de aprobación y selección, oídos el criterio del Ministerio de Trabajo y Seguridad Social.

8

**Artículo 29.- PENALIZACIONES POR RETRASO**

La tasa de penalización por retraso en la ejecución de obras, se practicará como sigue: 1/2000 por día del monto de contrato- y será calculado al costo máximo al 10% del contrato.

Estas penalizaciones no serán aplicadas al contratista en caso de retraso en el pago de las obligaciones por parte del Gobierno.
El retraso durante tres meses sin una notificación previa con relación al plannning actualizado facultará al Gobierno rescindir el contrato.


## CAPITULO III.- CONDICIONES DE GASTOS


**Artículo 30.- CARACTERES GENERALES DE LOS PRECIOS**

Los precios del presente contrato incluyen todos los gastos producidos de forma directa y necesaria a consecuencia de las obras y en particular:
- Los gastos de replanteo y jalonamiento de las obras; gastos de reclutamiento de la mano de obra.
  Gastos de instalación y de repliegue del material de la obra.

**Artículo 31.- BASES DE REGLAMENTO DE LAS CUENTAS**

Los derechos de pago por el concepto de anticipos serán calculados en fracciones milésimales con respecto a la cuantía del contrato y pagados previa presentación del estado de los descuentos dentro de ocho a quince días del mes aplicados en concepto de avance de trabajos, teniendo en cuenta los anticipos anteriores otorgados en el marco de las limitaciones de los créditos de pagos previstos por el presente contrato.

**Artículo 32.- EVALUACION DE LOS TRABAJOS**

La evaluación de los trabajos ejecutados podrá ser remplazada por una certificación mensual o cada ocho a quince días del mes que el contratista entregara al ingeniero.

**Artículo 33.- RESCISION DEL CONTRATO**

El Cliente podrá rescindir el presente Contrato por las causas siguientes:

    a) La quiebra o disolución del Adjudicatario

9

b) La no iniciación de los trabajos por parte del Adjudicatario, en el plazo de 60 días a partir de la fecha de aceptación del Proyecto y supuesta la plana y libre disposición de los terrenos a que se hace referencia en la Condición Primera.

c) La suspensión de la obra por causas imputables al adjudicatario, por más de 90 días después de comenzadas, sin que concurran circunstancias especiales para ello.

El Contratista podrá rescindir el presente Contrato por las causas siguientes:

a) Cuando el Cliente interfiera, obstruya o niegue cualquier aprobación necesaria para la emisión de cualquiera de las Certificaciones.

b) La paralización de las obras un plazo superior a tres meses, por causas imputables al Cliente.

En caso de rescisión del contrato, el contratista recuperará los materiales importados a régimen de importación temporal sujetándose a lo estipulado en el artículo 2 del presente contrato.

Dicho material, equipos y maquinaria quedarán sujetos a retención en caso de rescisión imputable a la empresa.



## CAPITULO IV.- PAGOS

### Artículo 34.- ANTICIPOS

Anticipos y arranque:

El contratista podrá obtener, a petición del mismo y sin necesidad de pasar por la prueba de desembolso a partir del momento de la firma del contrato, un anticipo de comienzo de las obras, por una cifra igual al 30% del monto del contrato, contra la entrega del aval Bancario correspondiente.

Dicho anticipo será reembolsado deduciendo de cada certificación el 30% correspondiente.

### Artículo 35.- CONDICIONES DE PAGO- INTERES POR MORA

Las evaluaciones de los trabajos ejecutados serán remitidas al ingeniero al final de cada mes o cada ocho a quince días. El ingeniero dispondrá de un plazo de quince (15) días para verificar y constatar el estado de ejecución de las obras efectuadas, así como para firmar las certificaciones mensuales.

10

Las certificaciones mensuales de las obras ejecutadas por el contratista serán pagadas en un plazo de Cuarenta y cinco (45) días a partir de la firma, o sea, sesenta (60) días contados a partir de la fecha que fueron remitidas por el contratista al ingeniero.

Cualquier pago efectuado fuera de los plazos establecidos dará derecho al contratista a la reclamación de unos intereses moratorios calculados a partir de la fecha de vencimiento del plazo, a una tasa 1/2000 por día de las certificaciones.

Artículo 36.- LUGAR DE PAGO

- El pago del anticipo se realizará en el *SGBGE ITALABO* cuenta número *371 50343601-35* contra la entrega de la correspondiente garantía bancaria.

- Los sucesivos pagos serán domiciliados y pignorados en el banco *371 50343601-35*, cuenta número *SGBGE ITALABO* a la presentación de los certificados.

Los pagos siguientes serán efectuados a la presentación de la certificación.

Artículo 37.- RECEPCION ANTICIPADA.

El Gobierno se reserva al derecho de recepcionar una o varias partes de las obras, a medida que se vayan concluyendo éstas y antes de la conclusión final y completa de las obras en la forma prevista en el contrato.

Artículo 38.- RECEPCIÓN PROVISIONAL Y DEFINITIVA

La recepción provisional de las obras será acordada al concluirse los trabajos de cada obra. La recepción definitiva será acordada un (1) año después de la recepción provisional.

Durante el periodo de garantía establecido en un (1) año, el contratista queda obligado de asegurar el mantenimiento de las obras en perfectas condiciones y de acuerdo a las cláusulas establecidas por el contrato. Si durante el periodo de garantía, el contratista no asegura el mantenimiento de las obras, el Gobierno estará en el derecho de ejecutar por sí o por terceros los trabajos correspondientes por los medios que estime conveniente, bajo costo y riesgo del contratista.

Para tal fin la empresa depositará un aval Bancario del 10% o aceptará una retención por el Gobierno del mismo importe.

11

## 39.- LIQUIDACION DEFINITIVA DE LA OBRA

La liquidación definitiva de la obra responderá a los planos actualizados que serán depositados en las dependencias de la Administración para su correspondiente archivo.

## CAPITULO V.- DISPOSICIONES ADICIONALES

### Artículo 40.- LITIGIOS

En caso de litigio, las partes se reunirán para obtener una solución amigable, caso contrario, se someterán a los tribunales de Guinea Ecuatorial; o en última instancia el asunto se dilucidará según el procedimiento arbitral de la Cámara de Comercio Internacional.

### Artículo 41.- MEDIO AMBIENTE

El contratista realizará las obras, con sujeción a las normas ecológicas y medio ambientales propias del sector, cara a la protección, mejora y saneamiento del medio ambiente.

### Artículo 42.- PREFERENCIA NACIONAL.

El contratista se obliga a utilizar los productos, maquinaria, equipos, bienes, empresas y servicios nacionales o locales, con preferencia a los extranjeros, siempre y cuando estén en condiciones de disponibilidad, calidad, precio y disponibilidad que los productos a importar.

### Artículo 43- IDIOMA.

El presente contrato, así como sus anexos están redactados en español, francés e inglés. Para cualquier divergencia que pudiera surgir en la interpretación, aplicación o ejecución del contrato, la versión en español prevalecerá.

### Artículo 44.- UNIDAD CONTRACTUAL.

El presente contrato, incluidos sus anexos y / o demás piezas, forman parte integra del mismo; en caso de contradicción entre algunas disposiciones del Contrato y / o sus anexos, las disposiciones del Contrato prevalecerán.

12

Artículo 45.-ENMIENDAS.

El presente contrato no podrá ser modificado ni enmendado, sino mediante previo acuerdo por escrito por las partes.

En signo de comprobación y de conformidad del presente contrato, lo firman y lo rubrican en dos ejemplares originales con el mismo valor jurídico.

Por el Gobierno de la República de Guinea Ecuatorial:

El Ministro de Infraestructuras y Bosques
- Presidente de GEPROJETS.

Por la Empresa *FITZPATRICK EQUATORIAL GUINEA LTD*
Señor Don *DAVID DOUGLAS BAPLE*

13

PROYECTO DE CONSTRUCCION DE AUTOVIA
AEROPUERTO-ELA NGUEMA


## ANEXO DE CONTRATO


*1.- La empresa FITZPATRICK EQUATORIAL GUINEA LTD., 30 días después de la firma del contrato de ejecución de las obras, pondrá a disposición del Gobierno un Programa Detallado de Ejecución, que comprende:*

- *La lista y Curriculum vitae del personal afecto a la obra.*
- *El organigrama de la Empresa.*
- *La lista de maquinaria de ejecución y planning detallado de su llegada a la obra.*
- *Planning detallado de la ejecución de los trabajos.*
- *La metodología de ejecución de los trabajos.*
- *Calendario de cantidades y precios unitarios*

*2.- A la firma del contrato, la Empresa deberá poner su media firma en todos los planos y documentos del Ante-proyecto Detallado.*

*3.- Empresa producirá los planos de ejecución de los trabajos conforme a los documentos licitación y deberán estar aprobados por el Gobierno y la Oficina de Control antes de la ejecución.*

*4.- La Empresa donará a la Administración y a la Oficina de Control OCHO (8) VEHICULOS, entre los cuales (2) vehículos todo terreno tipo WAGON y (6) vehículos 4x4 tipo PICK UP DOBLE CABINA.*

5.-    A la recepción del anticipo del pago del 30%, y antes de recibir cualquier otro pago la Empresa deberá haber completado los siguientes trabajos:

- Provisión de todos los equipos y maquinarias.
- Establecimiento de oficinas y acomodamientos.
- Replanteo y limpieza.
- Movimientos de tierra.
- Establecimiento de canteras.

Malabo, 17 de Febrero de 2004

POR FITZPATRICK
EQUATORIAL GUINEA LTD.

DAVID DOUGLAS BAPLE

POR EL GOBIERNO DE LA

EL MINISTRO DE ESTADO
DE ESTADO DE
INFRAESTRUCTURAS Y
BOSQUES-PRESIDENTE DE
GEPROJETS



OFICINA NACIONAL DE PROYECTOS
O.N.P. R.G.E.



**República de Guinea Ecuatorial**
**P r e s i d e n c i a**
Oficina Nacional de Planificación
Y Seguimiento de Proyectos

Núm. ...........

Ref.ᵃ ...........

Secc. ...........

*ORDEN DE SERVICIO Nº17GEP/04 SOBRE LOS TRABAJOS DE CONSTRUCCIÓN DE LA AUTOVIA DESDE EL EDIFICIO DE LA TERMINAL DEL AEROPUERTO DE MALABO HASTA ELA-NGUEMA.*

*Por medio de la presente Orden de Servicio se invita a la Empresa FITZPATRICK EQUATORIAL GUINEA LTD, representada por Don DAVID DOUGLAS BAPLE para que ejecute los trabajos arriba indicados bajo las siguientes condiciones:*

- *El monto total de los trabajos sin tasas es de NOVENTA Y DOS MIL MILLONES (92.000.000.000) FRANCOS CEFAS.*

- *El plazo de ejecución de los trabajos de Construcción es de TREINTA Y SEIS (36) MESES.*

*La presente Orden de Servicio será notificada a la empresa FITZPATRICK EQUATORIAL GUINEA LTD por la Oficina Nacional de Planificación y Seguimientos de Proyectos de Guinea Ecuatorial (GEPROJETS).*

*Malabo, 17 de Febrero de 2004*
*POR UNA GUINEA MEJOR*
*El Ministro de Estado de Infraestructuras y Bosques*
*PRESIDENTE DE GEPROJETS*

*NOTIFICACION*

*Con fecha* 17/C *de 2004, yo, Don* Candido Nguema Chiang M. *representante de GEPROJETS notifico a D.* David DOUGLAS *representante de la empresa* FITZPATRICK *sobre la Orden de Servicio firmada el día* 17/2/04 *relativa a los trabajos de Construcción de la Autovía desde el edificio de la terminal del Aeropuerto de Malabo hasta Ela Nguema.*

*POR GEPROJETS,*

*POR LA EMPRESA*

€ **EURONET** 

27 August, 2004

## TO WHOM IT MAY CONCERN

The attached translation has been prepared under the control of Euronet and, to the best of our knowledge and belief, it is a true and accurate translation of the original document submitted to us.

Peter Barber

Digitally signed by Peter Barber
DN: cn=Peter Barber, o=Euronet, c=GB
Date: 2004.08.27 09:10:36 Z
Validity unknown

Peter Barber

*EURONET*
Proprietor: P A Barber, FCIArb FITI FIL DipArb DipTrans
Penrhiwgaer, Ystumtuen, Aberystwyth, Ceredigion SY23 3PQ Wales
Tel: 01970 880 777 Fax: 01970 880 888 Email: euronet@transeuronet.co.uk

REPUBLIC OF EQUATORIAL GUINEA

# CONTRACT FOR THE CONSTRUCTION OF THE AIRPORT-ELA NGUEMA HIGHWAY

**COMPANY:** FITZPATRICK EQUATORIAL GUINEA LTD

**AMOUNT:** 92,000,000,000 CFA Francs

**DEADLINE:** 36 MONTHS

**CONTRACT FOR THE CONSTRUCTION OF THE AIRPORT-ELA NGUEMA HIGHWAY.**

HAVING MET:

In the City of Malabo, Province of Bioko Norte, on the Sixteenth of February 2004

On the one hand, the Government of the Republic of Equatorial Guinea, represented by:

- *The Minister for Infrastructures and Woodland*
  *President of GEPROJETS*

Hereinafter referred to as the "the client or the Government"

On the other hand:

The Company *FITZPATRICK EQUATORIAL GUINEA LTD, represented by Mr DAVID DOUGLAS BAPLE with Passport No 093097884 in his capacity of Managing Director, with registered office in Malabo, registered in Malabo under No 211.*

Hereinafter referred to as "the Contractor or the Company"

Both with sufficient legal capacity, which is mutually recognised by the parties, they agree the following:

<u>CHAPTER I.- GENERAL PROVISIONS</u>

Article 1.- The object of the present Contract is: *The Construction of the Airport-Ela Nguema Highway. From the Terminal Building of Malabo Airport to the Roundabout on the road from RIABA to ELA NGUEMA. It includes the following:*

- *Construction of an arch bridge over the River Timbabé.*
- *Parallel service roads.*
- *All drainage ditches along the highway.*
- *All underground water culverts below the highway for channelling the various rivers which cross the road.*
- *Conduits crossing the highway for the installation of electricity, telephone cables and drinking water.*
- *Traffic signs at the points of the road where these are needed.*
- *A toll barrier on the highway.*
- *Lampposts along the road.*
- *Traffic-lights of the type used in England at the points of the road where these are needed.*
- *Construction of 4 m wide pavements and paving on both sides of the road.*
- *Creation of green spaces on both sides of the road.*

Article 2.- In accordance with the estimated budget and the table of unit prices, the cost of the work is fixed *at NINETY-TWO THOUSAND MILLION (92,000,000,000) CFA Francs, EXCLUDING ICNI[1], at the exchange rate of 1 EURO=655,957 CFA Francs.*

Payments will be made in accordance with Articles 34, 35 and 36 of the present Contract.

All goods, equipment and machinery which shall be exclusively used for the work shall benefit from the temporary import scheme and all materials to be used shall be free of import duties. Having completed the work, if the Company wishes to continue its activities, it shall pay all taxes and excise duties. The same shall apply if these items are sold or transferred to third parties.

The Company shall pay the port, transport and other costs in all cases.

Article 3.- CONTRACT DOCUMENTS

The following documents are an integral part of the Contract:

1.- Contract award document.
2.- Contract Annex document.
3.- Service Order.
4.- The Contract itself.
5.- The general contract conditions required by the specific clauses applicable in the Republic of Equatorial Guinea (specific technical specifications and general contract conditions), attached to the invitation to tender.
6.- Table of unit prices.
7.- Budgets.
8.- Construction schedule.
9.- Design drawings prepared by BCEOM and SCET CAMEROUN (lots 1, 2, 3, 4 and 5).
10.- Specific technical specifications for the project.
11.- Bank guarantee or insurance ensuring compliance with the Contract.

Article 4.- DESIGNATION OF THE GOVERNMENT'S REPRESENTATIVES

A) For the purposes of the present Contract, the term "GOVERNMENT" shall be understood to mean:

Any authority whose competence, for the purposes of the work to be carried out, is recognised by law and, more specifically, the Public Works Department, GEPROJETS and bodies contracted by the Government.

---

[1] Translator's note: Abbreviation not confirmed but believed to refer to the ICN turnover tax which CEMAC (Economic and Monetary Community of Central Africa) agreed to replace with a value added tax (VAT) in 1999, therefore equivalent to VAT.

B) The term "ENGINEER" shall mean the Experts authorised by the institutions indicated in the above paragraph and appointed by the Public Works Department and GEPROJETS to monitor the performance of the work.

## Article 5.- STAMPING AND REGISTRATION

The registration of the Contract, bank guarantee and insurance shall be paid for by the Contractor who shall be obliged to do this within fifteen (15) days of the signature of the Contract and payment of the 30% advance.

## Article 6.- TECHNICAL SUPERVISION AND WORK CERTIFICATES

The National Project Planning and Monitoring Office of Equatorial Guinea, "GEPROJETS", and the Ministry of Infrastructures and Woodland shall be responsible for the technical supervision and correct performance of the work covered by the present Contract. They shall also be responsible for issuing the corresponding work certificates. The Government may also contract one or more specialist Firms to monitor and supervise the work.

The Ministry of Finance and Budgets shall be responsible for paying the certificates sent to it by the National Project Planning and Monitoring Office of Equatorial Guinea, "GEPROJETS", and the Ministry of Infrastructures and Woodland in accordance with the present Contract.

## Article 7.- UNITS OF MEASUREMENT AND CURRENCY

The units of measurement used shall exclusively be those of the International System (SI units).

The currency used shall be the CFA Franc.

The Contractor shall be obliged to provide a sufficient number of qualified staff to complete its work.

## Article 8.- GUARANTEES AND INSURANCES

The Contractor shall provide the Government with an adequate bank guarantee, which shall always be equal to or greater than the advance payment, in order to ensure and guarantee due compliance with the contractual obligations.

This bank guarantee shall be irrevocable, unconditional and payable at first request if the Company has not complied with its contractual commitments. It must be made out in CFA Francs and shall remain valid from the date of its issue until the expiry of the period of responsibility for defects, as established in the Contract.

The guarantee shall be issued by a leading bank which is recognised internationally.

The Contractor shall also take out an insurance policy to cover any damage, risks, etc. which may be caused to third parties as a result of the work or its alterations.

These guarantees or insurances may not be cancelled or amended without the insurance company previously informing the Government and the latter approving this.

## CHAPTER II.- PERFORMANCE OF THE WORK

### Article 9.- PERFORMANCE OF THE WORK

The Contractor shall carry out the work covered by the present Contract in accordance with the standards generally recognised and accepted in the construction engineering and industry[2]. To this end, the Contractor shall establish its residence in the place determined by the Government and the notifications relating to the Contract shall be validly made to this address.

### Article 10.- PERMANENT PRESENCE OF THE CONTRACTOR AT THE WORK SITE

The Contractor shall ensure that, during working hours, the managers and qualified staff needed to ensure the normal operation of the Company and the progress of the work are permanently available.

### Article 11.- COMPLETION DEADLINE

The completion deadline for the work is fixed as 36 months. This deadline shall be calculated from receipt of the 30% advance payment and after notification of the Service Order to start the work.

This deadline shall include any work stoppages during rainy periods and also any delays or interruptions for any reason, except in cases of *force majeure*.

### Article 12.- DOCUMENTS WHICH THE CONTRACTOR MUST PROVIDE

1.- CONSTRUCTION PLAN.- The construction plan shall include, in particular, the details of the work which must be carried out in accordance with the guidelines of the signage drawings and must be delivered to the engineer within thirty (30) days of signature of the Contract or notification of the Service Order to start the work.

---

[2] Translator's note: This is a literal translation of the Spanish. However, it may be that this should say either "construction and engineering industry" [industria de ingeniería y construcción] or "construction engineering industry" [industria de ingeniería de construcción].

2.- STUDY, DESIGNS, PLANS AND WORKING DRAWINGS AND SPECIFIC DESCRIPTIVE BUDGET. The present budget[3] includes the studies, designs, plans, drawings and descriptive budgets for the work and their validation.

If other unplanned work is requested, studies may be produced by the Contractor according to a study project to be agreed between the Government and the Contractor.

3.- INSURANCE OR BANK GUARANTEE.- The insurance or bank guarantee ensuring compliance with the obligations and the Contract Registration in accordance with Article 3[4].

Article 13.- <u>INSTALLATION</u>

For the purposes of this Contract and during its term, the Government shall provide the Contractor with the land needed to install its logistical base.

If, at the end of the Contract, the Contractor indicates its desire to continue occupying the land specified in the above paragraph or to benefit from rights recognised in the present Contract, the Government may grant it the corresponding concession, subject to a legally made application.
The Contractor shall provide the engineer with an organisational schedule and an installation plan indicating the days for the installation and removal of the sites, offices, meeting rooms, storage areas and site accesses.

Article 14.- <u>SIGNAGE OF THE WORK</u>

The Public Works Department shall be responsible for establishing the traffic regulations on the roads affected by the construction work.

The work signs shall comply with the provisions of the regulations applicable in the Republic of Equatorial Guinea on this subject.

It is prohibited to erect public notices[5] at the work sites without the prior authorisation of the Infrastructures Department. Identification signs are excluded from this ban.

In support of the construction plan, the Contractor shall annex to this the signage diagrams appropriate to the various construction phases and shall be responsible for adapting these diagrams to the terrain in accordance with the indications, amendments or additions which may be made by the engineer before or during the work.

---

[3] Translator's note: This is a literal translation of the Spanish word "presupuesto". However, it may be that this should say "contract" ("contrato" in Spanish).
[4] Translator's note: The registration of the Contract is actually referred to in Article 5, not Article 3.
[5] Translator's note: This is a literal translation of the Spanish phrase "carteles públicos". However, the intended meaning may be "carteles publicitarios" ('advertising notices' or similar)

Without prejudice to the provisions of the following article, access to the sites shall be strictly prohibited for anyone not involved in the Company, except for the Government's representatives and the persons appointed by name by these representatives.

## Article 15.- CONTINUATION OF TRAFFIC

The Contractor shall assume responsibility for the costs caused by the arrangements needed to allow traffic to travel on the road and street sections affected by the work during its performance, under equivalent conditions to those existing on these roads before the start of the work, without prejudice to any speed limits, if applicable, agreed by the Ministry of Infrastructures and Woodland, with regard to the establishment of other roads allowing the traffic to travel in one direction.

## Article 16.- EXTRACTION OF QUARRY MATERIALS

The Contractor shall pay the corresponding fee for the extraction of quarry materials available within the public or private domain of the State, Municipality or Rural Communities and which it shall use under the present Contract. It must in all cases comply with the laws applicable in the country on the use of quarried materials.

## Article 17.- EFFECT ON PROPERTIES

The Contractor shall not be responsible for the effect of the construction work on private properties situated within the areas affected by the project. However, the Contractor shall be required to identify and inform the Government, before starting the work, of those properties and other assets which may be affected by the project, with a view to assessment and approval by the competent authority. Otherwise the Contractor shall be responsible for the corresponding compensation.

## Article 18.- TEMPORARY SITES

The temporary sites, service roads and excavations needed in order to establish the required access roads to the sites, reserves or deposits of materials and also borrowed fill shall be the responsibility of the Contractor, subject to agreement by the engineer on their implementation.

If the Contractor needs to use private roads in order to comply with the present Contract, the Government shall assume the costs of maintaining these roads used by the Contractor in good condition during the term of the work.

Article 19.- SETTING UP

The work of laying and marking out the sites shall be carried out under the direction and at the cost of the Contractor, subject to agreement by the engineer, before the work is started, except with regard to any undergrowth clearance.

Article 20.- INSPECTION AND TESTING OF MATERIALS

The site tests and inspections shall be carried out by the Infrastructures Department or by its legal representatives.

The Contractor shall pay the costs arising from all the tests required by the technical specifications and standard practices with regard to the quality of the work and the materials used in this. These tests shall be carried out by the engineer at or the[6] laboratory established in Equatorial Guinea or in the CEMAC[7] zone.

All the tests shall be carried out within a time limit allowing the work to gradually progress as established in the construction plan referred to in Article 12 of the present Contract.

The engineer may also carry out the additional tests and inspections which he considers necessary, at the Government's expense or at the Contractor's expense if manufacturing or construction errors attributable to the latter are revealed, to be verified in turn additional tests after and to rectify or correct the defective work.[8]

Article 21.- SITE CLEARANCE

The period for removing materials, installations, unused materials and waste of all kinds and also for restoring the sites used for the project is fixed as thirty (30) days from provisional acceptance of the work.

Article 22.- NIGHT WORK

The performance of work during[9] the night shall be subject to Government authorisation.

This authorisation shall not be required in any case where the Contractor takes the relevant steps to appropriately light the work site and if the work request has been made sufficiently in advance so that the engineer can supervise the work.

---

[6] Translator's note: This is a literal translation of the Spanish. It may be that this should say "at a laboratory" [en un laboratorio].

[7] Translator's note: CEMAC = Economic and Monetary Community of Central Africa.

[8] Translator's note: This is a literal translation of this clause as the Spanish is grammatically incorrect and does not make sense. It may be that this should say "The engineer may subsequently carry out additional tests after the defective work has been rectified or corrected".

[9] Translator's note: The Spanish word is "e" which means "and". It is assumed that this should be "en" meaning "during" in this case.

The form of lighting shall be subject to the engineer's approval.

The installation at work sites of lighting in coloured lines which may create confusion with airport runway lighting is totally prohibited.

### Article 23.- CONSTRUCTION SUGGESTIONS

In an attempt to evade its obligations contracted under the present Contract, the Contractor may not raise or make any complaint, question or reason which may derive from:
- The state of the sites and the access and working conditions.
- The presence or proximity to the edges of its work of other work being carried out for and on behalf of the Government.

### Article 24.- CASES OF *FORCE MAJEURE*

A case of *force majeure* shall be defined as those caused by wars, earthquakes and other events of the same nature, natural disasters, insurrections or any event preventing the performance of the work.

### Article 25.- WORK IN THE GOVERNMENT[10]

If the Government asks the Contractor to carry out work not included in[11] the present Contract, this shall be subject to an additional negotiated contract signed between the two parties.

### Article 26.- IMPORTANT CHANGES TO THE WORK

The Contractor may not alter, modify or introduce any substantial changes to[12] the nature of the work under the present Contract without the Government's prior authorisation.

### Article 27.- PRICE BASES

The prices established in the present Contract, as defined in Article 3 above, are subject to the conditions in the month of February 2004. The prices established in the present Contract are firm and non-revisable.

---

[10] Translator's note: This is a literal translation of the Spanish. It may be that this should say "WORK REQUESTED BY THE GOVERNMENT".
[11] Translator's note: The Spanish word is "e" which means "and". It is assumed that this should be "en" meaning "in" in this case.
[12] Translator's note: The Spanish word is "y" which means "and". It is assumed that this should be "a" meaning "to" in this case. The Spanish word 'alguno' (any) is also grammatically incorrect here.

Article 28.- <u>LABOUR</u>

The Contractor is obliged to recruit national or local labour for the posts which do not require qualified expatriate staff.

For each post for which qualified expatriate staff is required, the Contractor shall also appoint a national person capable of gradually assimilating the necessary techniques and acquiring the transfer of technology.

Before recruiting an expatriate, the Contractor shall request authorisation for this from GEPROJETS, for the purposes of approval and selection, having heard the opinion of the Ministry of Labour and Social Security.

Article 29.- <u>PENALTIES FOR DELAY</u>

The penalty rate for delays in performing the work shall be applied as follows: 1/2000 per day of the Contract amount. This shall be calculated subject to a maximum of 10% of the Contract.

These penalties shall not be imposed on the Contractor in the event of a delay in payment of the obligations by the Government.
A delay lasting three months without prior notification in relation to the updated schedule shall allow the Government to cancel the Contract.

CHAPTER III.- COST CONDITIONS

Article 30.- <u>GENERAL NATURE OF THE PRICES</u>

The prices of the present Contract include all the costs arising directly and necessarily from the work and in particular:
- The costs of laying and marking out the work; costs of hiring labour.
- Costs of installing and removing the work materials.

Article 31.- <u>BASES FOR PAYMENT OF ACCOUNTS</u>

The rights to payment of the advances shall be calculated in thousandth fractions of the Contract amount and shall be paid subject to presentation of the statement of discounts, within eight to fifteen days of the month, applied as an advance on the work, bearing in mind the previous advances granted within the limits of the payment credits specified by the present Contract.[13]

---

[13] Translator's note: This is a literal translation of the Spanish, the meaning of which is unclear.

Article 32.- <u>ASSESSMENT OF THE WORK</u>

The assessment of the work carried out may be replaced by a monthly certificate or one every eight to fifteen days in the month which the Contractor shall give to the engineer.

Article 33.- <u>CANCELLATION OF THE CONTRACT</u>

The Client may cancel the present Contract for the following reasons:

  a) The bankruptcy or winding-up of the Successful Tenderer.
  b) The failure by the Successful Tenderer to start the work within 60 days of the date of acceptance of the Project and assuming the full and free availability of the land referred to in the First Condition.
  c) The suspension of the work for reasons attributable to the Successful Tenderer for more than 90 days after this has been started, without the existence of any special circumstances for this.

The Contractor may cancel the present Contract for the following reasons:

  a) When the Client interferes with, obstructs or refuses any approval needed to issue any of the Certificates.
  b) The stoppage of the work for a period in excess of three months for reasons attributable to the Client.

If the Contract is cancelled, the Contractor shall recover the materials imported under the temporary import scheme in accordance with the provisions of Article 2 of the present Contract.

These materials, equipment and machinery shall be subject to retention in the event of cancellation attributable to the Company.


### CHAPTER IV.- PAYMENTS


Article 34.- <u>ADVANCE PAYMENTS</u>

Advance payments and start of the work:

The Contractor may receive, at its request and without needing to provide proof of any expenditure, on the signature of the Contract, an advance payment to start the work of an amount equal to 30% of the Contract amount, against delivery of the corresponding bank guarantee.

This advance payment shall be reimbursed by deducting the corresponding 30% from each certificate.

**Article 35.- TERMS OF PAYMENT – INTEREST FOR LATE PAYMENT**

The assessments of the work carried out shall be provided to the engineer at the end of each month or every eight to fifteen days. The engineer shall have a period of fifteen (15) days to check and record the state of performance of the work carried out and also to sign the monthly certificates.

The monthly certificates for the work carried out by the Contractor shall be paid within a period of forty-five (45) days from signature or sixty (60) days from the date when they were sent by the Contractor to the engineer.

Any payment made outside the periods established shall entitle the Contractor to claim interest for late payment calculated from the date of expiry of the payment deadline, at a rate of 1/2000 per day from the certificates.

**Article 36.- PLACE OF PAYMENT**

- The advance payment shall be made to _____, account number _____ against delivery of the corresponding bank guarantee.

- The subsequent payments will be domiciled and pledged at the _____ bank, account number _____ on presentation of the certificates.

The following payments will be made on presentation of the certificates.

**Article 37.- EARLY ACCEPTANCE**

The Government reserves the right to accept one or more parts of the work as these are completed and before the final and complete conclusion of the work in the manner specified in the Contract.

**Article 38.- PROVISIONAL AND FINAL ACCEPTANCE**

The provisional acceptance of the work shall be granted when the work on each site is completed. The final acceptance shall be granted one (1) year after the provisional acceptance.

During the guarantee period established as one (1) year, the Contractor shall be obliged to ensure that the work is maintained in perfect condition in accordance with the clauses established by the Contract. If, during the guarantee period, the Contractor does not maintain the work, the Government shall be entitled to carry out itself or through third parties the corresponding work by the means which it considers appropriate, at the cost and risk of the Contractor.

To this end, the Company shall deposit a bank guarantee of 10% or accept a retention by the Government of the same amount.

## 39.- FINAL PAYMENT FOR THE WORK

The final payment for the work shall be dependent on the updated plans which shall be deposited at the Government offices for their corresponding archiving.

## CHAPTER V.- ADDITIONAL PROVISIONS

### Article 40.- DISPUTES

In the event of any disputes, the parties shall meet in order to reach an amicable solution. Otherwise they shall submit any disputes to the courts of Equatorial Guinea or, as a last resort, the matter shall be resolved according to the arbitration procedure of the International Chamber of Commerce.

### Article 41.- ENVIRONMENT

The Contractor shall carry out the work subject to the ecological and environmental standards specific to the sector, with a view to the protection, improvement and preservation of the environment.

### Article 42.- NATIONAL PREFERENCE

The Contractor is obliged to use national or local products, machinery, equipment, goods, companies and services in preference over foreign ones, whenever these can be obtained under the same conditions of availability, quality, price and availability [*sic*] as the products to be imported.

### Article 43.- LANGUAGE

The present Contract, and its annexes, are written in Spanish, French and English. In the event of any disagreement which may arise in the interpretation, application or performance of the Contract, the Spanish version shall prevail.

### Article 44.- CONTRACTUAL UNIT

The present Contract including its annexes and/or other documents shall form an integral part of the Contract. In the event of any contradiction between any provisions of the Contract and / or its annexes, the provisions of the Contract shall prevail.

Article 45.- <u>AMENDMENTS</u>

The present Contract may not be modified or amended without the prior written agreement of the parties.

As a sign of their confirmation of and agreement with the present Contract, the parties sign and initial this in two originals with the same legal value.
For the Government of the Republic of Equatorial Guinea:

The Minister for Infrastructures and Woodland
- President of GEPROJETS.

For the Company *FITZPATRICK EQUATORIAL GUINEA LTD*
Mr *DAVID DOUGLAS BAPLE*

*SERVICE ORDER No 17GEP/04 FOR THE WORK TO CONSTRUCT THE HIGHWAY FROM THE TERMINAL BUILDING OF MALABO AIRPORT TO ELA-NGUEMA............................................*

*Through the present Service Order, the Company FITZPATRICK EQUATORIAL GUINEA LTD, represented by Mr DAVID DOUGLAS BAPLE, is invited to carry out the aforementioned work under the following conditions:*

- *The total amount for the work excluding taxes is NINETY-TWO THOUSAND MILLION (92,000,000,000) CFA FRANCS.*

- *The completion deadline for the construction work is THIRTY-SIX (36) MONTHS.*

*The present Service Order shall be notified to the Company FITZPATRICK EQUATORIAL GUINEA LTD by the National Project Planning and Monitoring Office of Equatorial Guinea (GEPROJETS).*

*Malabo, 17 February 2004*
*FOR A BETTER GUINEA*
*The Minister for Infrastructures and Woodland*
*PRESIDENT OF GEPROJETS*

---

*NOTIFICATION*

*On the date of _____ 2004, I, Mr ...................................................., representative of GEPROJETS, notify Mr......................................., representative of the company ..................................................., of the Service Order signed on the date of _____ for the work to construct the highway from the terminal building of Malabo Airport to Ela Nguema.*

*FOR GEPROJETS,*                    *FOR THE COMPANY,*

### AIRPORT-ELA NGUEMA
### HIGHWAY CONSTRUCTION PROJECT

## CONTRACT ANNEX

*1.-    The Company FITZPATRICK EQUATORIAL GUINEA LTD, 30 days after the construction contract has been signed, shall provide the Government with a Detailed Construction Plan which shall include:*

- *The list and curricula vitae of the staff assigned to the work.*
- *The Company's organisation chart.*
- *The list of construction machinery and a detailed schedule for its arrival on site.*
- *A detailed schedule for the construction work.*
- *The construction method.*
- *A bill of quantities and unit prices.*

*2.-    On the signature of the contract, the Company shall sign all the drawings and documents of the Detailed Preliminary Project.*

*3.-    The Company shall produce the working drawings in accordance with the invitation to tender documents and these shall be approved by the Government and the Supervising Office before the work is carried out.*

*4.-    The Company shall provide the Government and the Supervising Office with EIGHT (8) VEHICLES, consisting of (2) all-terrain STATION WAGON type vehicles and (6) 4x4 DOUBLE-CAB PICK UP type vehicles.*

5.- On receipt of the 30% advance payment and before receiving any other payment, the Company shall have completed the following work:

- Supply of all the equipment and machinery.
- Establishment of offices and facilities.
- Laying out and clearing.
- Earth movements.
- Establishment of quarries.

Malabo, 17 February 2004

FOR FITZPATRICK
EQUATORIAL GUINEA LTD

FOR THE GOVERNMENT OF
THE REPUBLIC OF
EQUATORIAL GUINEA

DAVID DOUGLAS BAPLE

THE MINISTER FOR
INFRASTRUCTURES AND
WOODLAND-PRESIDENT OF
GEPROJETS

 **EURONET**

TO WHOM IT MAY CONCERN

I, the undersigned Peter Alan Bruce Barber, hereby declare that I
am a Fellow of the Chartered Institute of Arbitrators, a Fellow of
the Chartered Institute of Linguists and a Fellow of the Institute
of Translation and Interpreting. I am a professional translator
with a sound knowledge of the English and Spanish languages
and I affirm that the English translation of Article 40 is a true and
faithful translation of the Spanish original.

Peter Barber FCIArb, FCIL, FITI
9 January 2012

Peter Barber
I attest to the
accuracy and integrity
of this document
Strathyre, Scotland
2012.01.09 17:29:59 Z

**EURONET TRANSLATIONS**
Partners: P A Barber, FCIArb FCIL FITI DipArb DipTrans and M A Cameron MA MA MITI MCIL DipTrans
Balvag House, Strathyre, Callander, FK18 8NQ, Scotland
Tel: 01877 384 677 Fax: 01877 384 355 Email: euronet@transeuronet.co.uk

Spanish original

Artículo 40.- <u>LITIGIOS</u>

En caso de litigio, las partes se reunirán para obtener una solución amigable, caso contrario, se someterán a los tribunales de Guinea Ecuatorial; o en última instancia el asunto se dilucidará según el procedimiento arbitral de la Cámara de Comercio Internacional.

**Valid English translation by Euronet**

Article 40.- <u>DISPUTES</u>

In the event of any disputes, the parties shall meet in order to reach an amicable solution. Otherwise they shall submit any disputes to the courts of Equatorial Guinea or, as a last resort, the matter shall be resolved according to the arbitration procedure of the International Chamber of Commerce.

*Fitzpatrick Equatorial Guinea/Republic Equatorial Guinea*          *ICC Case no. 14576/CCO/JRF*

# TERMS OF REFERENCE

In the matter of an Arbitration under the
Rules of Arbitration of the
International Chamber of Commerce – Case ICC 14576/CCO/JRF

between:

## Claimant

Fitzpatrick Equatorial Guinea Limited

Claimant
Counter-Respondent

and

## Respondent

The Republic of Equatorial Guinea

Respondent
Counterclaimant

Date, March 21, 2008

*Fitzpatrick Equatorial Guinea/Republic Equatorial Guinea*          *ICC Case no. 14576/CCO/JRF*

*Terms of Reference - page 2*

TABLE OF CONTENTS

I.      THE PARTIES ............................................................................................ 3

II.     NAMES AND ADDRESSES OF THE ARBITRATORS ................................................. 4

III.    NOTIFICATIONS AND COMMUNICATIONS ............................................................ 5

IV.     SUMMARY OF FACTS AND PROCEDURE TO DATE ................................................ 8

V.      SUMMARY OF CLAIMS AND DEFENCES OF THE PARTIES ..................................... 14

        A.      PURPOSE OF THE SUMMARY .................................................... 14
        B.      SUMMARY OF CLAIMANT'S CASE............................................. 14
        C.      SUMMARY OF RESPONDENT'S CASE.......................................... 15

VI.     ISSUES TO BE DETERMINED BY THE ARBITRAL TRIBUNAL.................................. 19

VII.    PLACE OF ARBITRATION .............................................................................. 23

VIII.   APPLICABLE PROCEDURAL RULES.................................................................. 23

IX.     APPLICABLE SUBSTANTIVE LAW .................................................................... 23

X.      LANGUAGE ............................................................................................... 23

XI.     TIME SCHEDULE OF THE ARBITRATION........................................................... 24

XII.    VAT ....................................................................................................... 24