## I.     THE PARTIES

[1]     <u>Claimant/Counter-Respondent</u>:

Fitzpatrick Equatorial Guinea Limited, a company existing under the laws of Equatorial Guinea and registered in Malabo under number 211, Malabo, Equatorial Guinea

hereinafter referred to as "Claimant".

Claimant is allegedly represented in this arbitration by its attorneys, Mr. Ponciano Mbomio Nvó, Cabinete Juridico Ponciano Mbomio Nvó, c/Enrique Nvó, Apartado 424, Malabo, Equatorial Guinea, Facsimile: +240- 09 45 23, e-mail: mbomio_ponciano@yahoo.es and Mr. David Weare of the firm Davies Arnold Cooper, 6-8 Bouverie Street, London EC4Y 8DD, United Kingdom, e-mail: dweare@dac.co.uk , Telephone +44-20-7936 2222, Facsimile: +44-20-7936 2020

and/or

Mr. Mamadou Badiane, Receiver in the insolvency proceedings of Claimant, 31, rue Amadou Assane N'doyé, BP 3895 Dakar, Senegal, e-mail: Mamadou.badiane@wanadoo.fr , Telephone +221-822 29 23, Facsimile: +221-822 23 50.

The subject of court representation on behalf of Claimant is contested and will be dealt with below.

[2]    <u>Respondent/Counter-Claimant</u>:

The Republic of Equatorial Guinea, represented by the Minister for Infrastructure and Urban Development, rue Argelia, Malabo, Republic of Equatorial Guinea

hereinafter referred to as "Respondent".

[3]    Respondent is represented in this arbitration by its duly authorised attorneys, Mr. H. Page, Penlaw International Law Firm, 23 rue d'Anjou, 75008 Paris, France, e-mail <u>h.page@penlaw.fr</u> , Telephone: +33-1-44 51 59 70, Facsimile: +33-1-44-51 59 71 and Mr. Rasseck Bourgi, 10, rue du Chevalier de Saint-George, 75001 Paris, France, e-mail: <u>rasseck.bourgi@wanadoo.fr</u> , Telephone: +33-1-53 96 90 90, Facsimile: +33-1-53 96 98 98.

**II.    NAMES AND ADDRESSES OF THE ARBITRATORS**

[4]    The Secretary General of International Court of Arbitration of the International Chamber of Commerce, by decisions dated February 26 and May 23, 2007, has constituted the Arbitral Tribunal as follows:

Mr. Gwyn Owen
Co-Arbitrator
Ashdale House
Higher Penley
Wrexham LL13 0NB
United Kingdom
e-mail: <u>gwyn@easynet.co.uk</u>
Telephone: +44-1978 710 307
Facsimile: +44-1978 710 227

Prof. Philippe Leboulanger

Co-Arbitrator

5, rue de Chaillot

75116 Paris

France

e-mail : phl@leboulanger-avocats.com

Telephone : +33-1-40 70 14 81

Facsimile : +33-1-47 23 67 96

Prof. Dr. Filip De Ly

Chairman

Johan Buziaulaan 33

3584 ZT Utrecht, The Netherlands

e-mail: dely@frg.eur.nl

Telephone: +31-30-251 11 32

Facsimile: +31-30-254 61 70

## III.    NOTIFICATIONS AND COMMUNICATIONS

[5]    All notifications and communications arising in the course of this arbitration shall be deemed to have been validly made to each party when they have been made by delivery against receipt, registered mail, courier, facsimile transmission or any other means of telecommunication that provides a record of the sending thereof to:

Claimant:

Mr. Ponciano Mbomio Nvó
Cabinete Juridico Ponciano Mbomio Nvó
c/Enrique Nvó, Apartado 424
Malabo, Equatorial Guinea
Facsimile: +240- 09 45 23
e-mail: mbomio_ponciano@yahoo.es

and

Mr. David Weare
Davies Arnold Cooper
6-8 Bouverie Street
London EC4Y 8DD
United Kingdom
e-mail: dweare@dac.co.uk
Telephone +44-20-7936 2222
Facsimile: +44-20-7936 2020

and/or

Mr. Mamadou Badiane
Receiver in the insolvency proceedings of Claimant
31, rue Amadou Assane N'doyé
BP 3895 Dakar, Senegal
e-mail: Mamadou.badiane@wanadoo.fr
Telephone +221-822 29 23
Facsimile: +221-822 23 50

<u>Respondent</u>:

    Mr. H. Page
    Penlaw International Law Firm
    23 rue d'Anjou
    75008 Paris, France
    e-mail h.page@penlaw.fr
    Telephone: +33-1-44 51 59 70
    Facsimile: +33-1-44-51 59 71

    and

    Mr. Rasseck Bourgi
    10, rue du Chevalier de Saint-George
    75001 Paris, France
    e-mail: rasseck.bourgi@wanadoo.fr
    Telephone: +33-1-53 96 90 90
    Facsimile: +33-1-53 96 98 98

[6]    All notifications and communications by either party to the Arbitral Tribunal shall be made by one of the above-mentioned means to the address of the arbitrator, as set forth in Section II.

[7]    A copy of any notification or communication by either party to the Arbitral Tribunal shall simultaneously be transmitted to the other party by the same means.

[8]    In relation to procedural matters, notifications and communications may take place by e-mail only. On the other hand, submissions with annexes will also be filed in hard copy.

[9]     A copy of any notification or communication by either party to the Arbitral Tribunal or by the Tribunal to the parties shall be simultaneously transmitted to the Secretariat of the International Court of Arbitration of the ICC for the attention of the counsel in charge:

> Mr. José Ricardo Feris, Counsel
> Secretariat ICC International Court of Arbitration
> 38, Cours Albert 1er
> 75008 Paris
> France
> e-mail : ica1@iccwbo.org
> Telephone: +33-1-49 53 29 03
> Facsimile: +33-1-49 53 29 33

or for the attention of such other counsel as may be notified by the ICC to the parties and the Arbitral Tribunal from time to time.

[10]    Any change of name, description, address, telephone or facsimile number shall immediately be notified by the party or arbitrator concerned to every other addressee referred to in this Section. Failing such notification, notifications and communications sent in accordance with the present Section shall be valid.

## IV.   SUMMARY OF FACTS AND PROCEDURE TO DATE

[11]    On February 17, 2004, Claimant and Respondent contracted for the construction of a motorway between the airport of Malabo and the town of Ela Nguema on the island of Bioko, Equatorial Guinea (hereinafter referred to as the "Contract").

[12]    Following a dispute arising out of the Contract, Claimant terminated the Contract on March 14, 2005. Respondent objected to the termination of the Contract. Respondent considers that the termination was a wrongful

repudiation and without justification. In April 2005, Respondent arranged for an (independent) survey to be carried out by Mr. Paul Battrick, a Chartered Quantity Surveyor, a Fellow of the Royal Institute of Chartered Surveyors, a Member of the Chartered Institute of Arbitrators and a CEDR Accredited Mediator.

[13]    The Parties have been unable to find an amicable solution to their disputes.

[14]    On June 9, 2006, Claimant submitted to Respondent its claim for additional moneys due under the contract, or as damages for breach of contract, asking for a reply within 60 days which allegedly was not received.

[15]    On September 6, 2006, Claimant filed a Request for Arbitration against Respondent with the ICC, in which it sought: (i) a monetary claim for an amount of CFA Francs 14,939,299,635-, being additional moneys due under the contract, or as damages for breach of contract; (ii) reimbursement of its legal costs and associated expenses of pursuing the arbitration, together with the costs and fees charged by the International Chamber of Commerce and the arbitral tribunal. Claimant reserved its right to revise the quantum of its claim in the course of the arbitration, whether to take account of an increased entitlement to recover interest, or otherwise. Claimant's preference was for the dispute to be settled by a sole arbitrator, for the place of arbitration to be Paris, France and for the language of the arbitration to be English.

[16]    By a faxed letter dated November 9, 2006, the ICC confirmed that the Request for Arbitration had been received by the Respondent on October 4, 2006 and that the 30 day time limit for the Respondent's Answer had expired on November 6, 2006 and decided to submit the matter to the ICC Court in order for the Court to decide whether or not this matter shall proceed. By fax dated December 7, 2006, the ICC granted Respondent ten further days to file its comments.

[17]    On December 19, 2006, Respondent filed its Answer to Claimant's Request for Arbitration, in which it contested jurisdiction for an arbitral tribunal and nominated Professor Philippe Leboulanger as co-arbitrator for the event that an arbitral tribunal of three persons were to be composed and without prejudice to such contention.

[18]    On January 2, 2007, Claimant appointed Mr. Gwyn Owen as co-arbitrator for the event that an arbitral tribunal of three persons were to be composed.

[19]    On January 25, 2007, the ICC informed the parties that the ICC International Court of Arbitration at its session of January 19, 2007 had fixed Paris, France as the place of arbitration and had decided that a three-member arbitral tribunal was to be constituted and that, in view of Respondent's jurisdictional objection, the arbitration was to proceed in accordance with Article 6 (2) of the ICC Arbitration Rules.

[20]    By a letter dated January 25, 2007, Claimant responded to Respondent's jurisdictional objections and also noted that it had not received a full copy of the "Expert Report" prepared by Paul Battrick and attached to Respondent's letter of December 19, 2006; to date Claimant alleges never to have been provided with a full report of that report by Respondent. By a letter dated January 30, 2007, Respondent allegedly declined to respond to Claimant's arguments. Respondent asserts in this respect that the full report has been sent several times including to the ICC and Claimant's Counsel on February 14, 2007 and also again on March 10, 2008 to Claimant's Counsel.

[21]    By a letter dated February 12, 2007, *inter alia*, Claimant noted that its previous request for a full copy of the "Expert Report" prepared by Paul Battrick had not been responded to.

[22]     On February 26, 2007, the ICC informed the parties that the Secretary General of the ICC International Court of Arbitration had confirmed the nomination of the co-arbitrators.

[23]     On February 14, 2007, Respondent informed the ICC that it intended to file a counterclaim for a minimum of 11.1 billion CAF in relation to the alleged wrongful termination of the Contract by Claimant; any such amount to be increased with additional costs related to completion of the project by different companies and delays caused.

[24]     On March 7, 2007, the co-arbitrators confirmed in writing that they had nominated Professor Filip De Ly, a Belgian citizen resident at Utrecht, The Netherlands as Chairman of the Arbitral Tribunal. On March 12, 2007, the ICC invited Professor De Ly to accept this nomination which was done in writing on March 17, 2007.

[25]     By letter dated June 13, 2007, the ICC informed the parties that the Secretary General of the ICC Court on May 23, 2007, had confirmed Professor Filip De Ly as Chairman of the arbitral tribunal and that the file was being transmitted to the Arbitral Tribunal.

[26]     On July 18, 2007, the Arbitral Tribunal gave a number of procedural directions regarding the management of the case.

[27]     By letters dated July 19, 23 and 24, 2007, the parties expressed their agreement in relation to exchanges by e-mail as well as their arguments regarding the language of the proceedings.

[28]     By Respondent's letter dated July 24, 2007, the Arbitral Tribunal was informed that insolvency proceedings had been opened in Equatorial Guinea against Claimant and that Claimant had been declared insolvent on February 22, 2007

by a decision of the Court in Malabo, Equatorial Guinea with the appointment of Mr. Mamadou Badiane as receiver.

[29]     On July 27, 2007, Mr. Weare replied to Respondent's letter dated July 24, 2007 in relation to the insolvency proceedings against Claimant indicating *inter alia* that (1) Claimant understood that the proceedings were instigated by Respondent; (2) Claimant and its directors did not receive notification of the insolvency proceedings; (3) Claimant and its directors had no opportunity to attend any hearings in the insolvency proceedings or to present a defence; (4) Claimant was not notified of this declaration of insolvency until 15 May 2007 some three months after the liquidator had purportedly been appointed; (5) Claimant had instituted proceedings in Equatorial Guinea against the February 22, 2007 insolvency order and that Claimant did not recognize the insolvency proceedings.

[30]     On July 28, 2007, the Tribunal received a letter dated July 27, 2007 (with annexes) of Mr. Badiane as Claimant's receiver in which Mr. Badiane requested to be informed about the arbitration proceedings and indicated that he was the only person authorized to represent Claimant.

[31]     On August 1, 2007, Respondent replied to the letters referred to above.

[32]     On August 2, 2007, the Tribunal suspended the arbitration proceedings until September 15, 2007 in order to obtain clarification as to Claimant's standing and representation in the arbitration proceedings.

[33]     On September 14, 2007, Mr. Weare filed a letter with the Tribunal as to the standing of Claimant in the arbitration proceedings.

[34]     On September 18, 2007, the Tribunal extended the suspension until further notice and invited Respondent to reply to the September 14, 2007 letter by September 25, 2007.

[35]    On September 25, 2007, Respondent filed its reply (with annexes) to the September 14, 2007 letter.

[36]    On September 26, 2007, the Tribunal also received a note of Mr. Badiane indicating that Mr. Badiane as Claimant's receiver considered that he alone was authorized to represent Claimant.

[37]    On October 5 and 9, 2007, the Tribunal received further e-mails from Mr. Badiane (with annexes) stating that the insolvency proceedings had complied with all legal requirements in Equatorial Guinea and that the February 22, 2007 insolvency order had become final since no means of recourse against the order had been filed within the time limits imposed by law.

[38]    On October 29, 2007, the Arbitral Tribunal informed the parties of its decisions as to the language of the proceedings, the drafting of the Terms of Reference and the management of the case.

[39]    On December 6, 2007, Mr. Weare sent a fax to Mr. Badiane with a number of questions regarding the insolvency proceedings against Claimant in Equatorial Guinea.

[40]    On December 15, 2007, Mr. Badiane replied to the December 6 fax reiterating that the insolvency proceedings complied with the laws of Equatorial Guinea and that the insolvency order had become final.

[41]    On February 1, 2008, the Tribunal received a fax from Mr. Weare requesting that correspondence to Mr. Mbomio Nvó be sent by e-mail rather than by fax.

[42]    On February 18, 2008, the ICC informed the Arbitral Tribunal that the ICC Court, at its session of February 14, 2008, had extended the time period for establishing the Terms of Reference until April 30, 2008. Previous extensions

had been granted by decisions of the ICC Court dated October 12 and December 7, 2007.

[43]     On February 22, 2008, the Arbitral Tribunal sent draft Terms of Reference to the parties for their review and comments. On the basis of the parties' replies dated March 7, 12 and 14, 2008, the Tribunal finalized the Terms of Reference and sent those to the parties for signature on March 21, 2008.

## V.     SUMMARY OF CLAIMS AND DEFENCES OF THE PARTIES

### A.     Purpose of the Summary

[44]     The purpose of the following summary is to satisfy the requirements of Article 18(1)(c) of the ICC Rules (1998), without prejudice to any other or further allegations, arguments and contentions contained in the pleadings or submissions already filed and in such submissions as will be made in the course of this arbitration. Accordingly, the Tribunal shall be entitled, subject to Articles 15 and 19 of the ICC Rules and other applicable procedural requirements such as, inter alia, procedural time limits, to take into consideration further allegations, arguments, contentions and oral or written submissions. By signing these Terms of Reference, neither party subscribes to, or acquiesces in, the summary set forth below.

### B.     Summary of Claimant's Case

[45]     Claimant alleges that Respondent is in breach of its obligations under the Contract and that it was entitled to terminate the Contract. In relation thereto, Claimant has the following prayers for relief: (i) a monetary claim for an amount of CFA Francs 14,939,299,635-, being additional moneys due under the contract, or as damages for breach of contract; (ii) reimbursement of its legal costs and associated expenses of pursuing the arbitration, together with the costs and fees charged by the International Chamber of Commerce and the

arbitral tribunal. Claimant reserves its right to revise the quantum of its claim in the course of the arbitration, whether to take account of an increased entitlement to recover interest, or otherwise.

C.     Summary of Respondent's Case

[46]     Respondent has contested the jurisdiction of the Arbitral Tribunal and has disputed that Claimant was entitled to terminate the Contract. In this respect, Respondent has submitted (part) of an interim report prepared by Mr. Paul R. Battrick. It has indicated to the ICC that it intends to file a counterclaim for a minimum of 11.1 billion CAF in relation to the alleged wrongful termination of the Contract by Claimant; any such amount to be increased with additional costs related to completion of the project by different companies and delays.

[47]     Respondent has, further, requested that its position as to certain issues be incorporated as follows in the Terms of Reference.

[48]     Lack of Jurisdiction: The Respondent considers that the jurisdiction clause is defective. The way in which Article 40 is written and in particular the order of different jurisdictions provided under such Article, requires the Parties to submit any dispute firstly to the competent Court in Equatorial Guinea and secondly to arbitration before the ICC. However, if there is a decision of the Courts of Equatorial Guinea, it is impossible for the same dispute to be dealt with thereafter by ICC arbitration. A jurisdiction clause cannot validly provide that a dispute will be decided successively by two totally separate jurisdictions, one of a State (the Courts) and the other by Arbitration before the ICC.

[49]     The Republic therefore considers that the passage in the jurisdiction clause referring to the jurisdiction of the ICC in the last resort (apparently as a kind of appeal from the decision of the Courts of Equatorial Guinea), is a nullity. The ICC cannot have jurisdiction to hear an appeal relating to the decisions rendered by the State Courts.

[50]    Given the above, the Respondent submits that the jurisdiction clause (particularly as regards ICC arbitration) is a nullity and that the Arbitrators should find that they do not have jurisdiction.

[51]    If, contrary to the above arguments, the Arbitral Tribunal considers the Jurisdiction Clause to be valid, the Respondent asks the Tribunal to ensure that the three stage procedure provided under Article 40 for dispute resolution is observed. This procedure is (i) to attempt an amicable settlement, (ii) if there is no settlement to submit the dispute to the competent Courts of Equatorial Guinea and (iii) it is only in the last resort that Article 40 provides for this dispute to be resolved by arbitration before the ICC. The Respondent submits that by referring the dispute directly to the ICC the Claimant has not respected the provisions of Article 40, (assuming such Article to be valid, which the Respondent considers not to be the case). Thus the Respondent asks the Tribunal to declare itself not to have jurisdiction to decide upon the claims presented by the Claimant as they have to be presented first to the Courts of Equatorial Guinea.

[52]    In the above circumstances, the Respondent asks the Arbitral Tribunal to make a preliminary finding on the question of jurisdiction, on the alternative grounds set out above, by way of a preliminary award. Without prejudice to this, the Respondent presents below a summary of its arguments on the merits.

[53]    Concerning the Representation of the Claimant company: The Respondent has already set out in previous documents filed herein that, according to established arbitration case law, one of the most important consequences resulting from the commencement of insolvency proceedings is "the requirement to keep informed and to consider the receiver/liquidator or other person appointed to be the authorised person to act in arbitral proceedings as legal representative of the party being the subject of insolvency proceedings". The liquidator should therefore be recognised as the person having capacity to represent the Claimant.

[54]     This is of particular importance, given that the Respondent requires any decision that the Tribunal might make to be enforceable against the liquidator in his quality as representative of the company in liquidation and thus to avoid in future any possible challenge that could be made by the liquidator.  If he is not the representative of the Claimant in these proceedings, the Liquidator could claim that due to this fact, the proceedings are not valid, as regards any decision that the Respondent may wish to rely upon, for example during enforcement proceedings.  It is essential, for any award be enforceable against the Claimant company, that the Claimant be represented by the liquidator.

[55]     The law applicable to the liquidation of the Claimant, a company incorporated in Equatorial Guinea, is the law of Equatorial Guinea including the OHADA law, not the Spanish laws of 1888 and 1922.

[56]     There is nothing which gives reason to doubt the regularity of the liquidation procedure relating to the Claimant having regard to the applicable law and in particular in the following respects:  the procedure by which the Court was seized of the matter;  the giving of notice;  the respect of the formal requirements of the liquidation judgment;  the respect of publicity formalities relating to the judgment and the fact that no appeal has been made against the liquidation judgment.

[57]     The claims presented by the Claimant are ill-founded and the counterclaims are justified:  Should the Arbitral Tribunal consider itself to have jurisdiction, the Respondent will ask the Tribunal to: find the claim of the Claimant to be ill-founded and to find that the Claimant wrongly repudiated the contract; to find that the Claimant did not properly perform the contract and wrongly abandoned its performance thereof; to find that the Claimant has already received an advance of 27.6 billion francs CFA whereas the work carried out does not justify a payment of more than 16.5 million francs CFA; to consider the counter-claim to be well-founded; to order the Claimant to pay the Respondent the losses caused by the breaches of the Claimant both as to the difference in

value of the work carried out and the loss due to delay in performance and the additional cost of completing the contracted work above that envisaged in the Contract between the Parties. The Respondent will develop its arguments in its submissions to be filed should the Arbitral Tribunal consider that it has jurisdiction despite the objections relating to jurisdiction set out above.

[58]   Thus the Respondent, the Republic of Equatorial Guinea, as a first argument raised before any discussion on the merits, requests the Tribunal to decide by preliminary award the questions relating to its jurisdiction and the proper representation of the Claimant company.

[59]   As an alternative and subsidiary position, should the Tribunal consider that it has jurisdiction, the Respondent asks the Tribunal to find: that the Claimant has committed a fault in its performance of the contract; that its abandonment or termination of the contract represented a wrongful repudiation thereof; that the Respondent is entitled to recover by way of counterclaim all loss and damage caused by the breaches and improper position adopted by the Claimant; to order the Claimant to pay to the Respondent, by way of counter-claim an amount of a minimum of 11.1 billion francs CFA to which should be added all loss and damage resulting from the delays and additional costs incurred due to the intervention of other companies and its loss of revenue; to reject all the Claimant's demands; that the Claimant should pay to the Respondent all the costs relating to the Arbitration, including legal fees, experts fees, the ICC Arbitration and Secretariat costs and any other fees or costs incurred.

[60]   The Respondent reserves the right to develop in its subsequent pleadings all other arguments in support of its claims and leading to the rejection of the claims presented by the Claimant.

## VI.　ISSUES TO BE DETERMINED BY THE ARBITRAL TRIBUNAL

[61]　The issues to be determined by the Arbitral Tribunal shall be those resulting from the parties' submissions, including forthcoming submissions, and which are relevant to adjudication of the parties' respective claims and defences, subject to the provisions of Article 19 of the ICC Rules. These issues will include the jurisdiction of the Arbitral Tribunal under the dispute resolution clause of the Contract as well as the representation of Claimant in these arbitration proceedings as this is contested in relation to the insolvency proceedings against Claimant which have been instituted in Equatorial Guinea.

[62]　In the context of these proceedings, the liquidator has requested that its position on certain issues be recorded in the Terms of Reference. In this respect, he firstly pointed out as follows:

- The company Fitzpatrick Equatorial Guinea, the Claimant herein, is a company incorporated in, and in accordance with the laws of Equatorial Guinea. It is therefore subject to the law of Equatorial Guinea and in particular all questions of its status and matters relating to its insolvency are subject to such law.

- That the liquidation of Fitzpatrick Equatorial Guinea (FEG) was ordered by Judgment of 22nd February 2007 rendered by the First Instance judge of Malabo, Equatorial Guinea.

- That the judgment included a provision for "execution provisoire" i.e. immediate enforcement in accordance with Article 217 of the Acte Uniforme de l'OHADA which provides for the organisation of collective proceedings for settlement of debts (i.e. insolvency proceedings). I will

hereinafter refer to such proceedings as the "Insolvency Proceedings".

- That in any case no appeal has been made nor opposition raised within the time legally permitted under Articles 216 to 225 of the Acte Uniforme de l'OHADA relating to insolvency proceedings, the law applicable in the Republic of Equatorial Guinea and the judgment ordering liquidation of FEG is now final and with "autorité de la chose jugée".

- That the recitals in the Judgment of 22nd February 2007 confirm that the procedure provided for under Article 29 of the Acte Uniforme de l'OHADA relating to insolvency proceedings has been respected. These recitals are legally binding and of enforceable effect vis-à-vis the former directors of FEG.

- That the regularity of the procedure which resulted in the liquidation of FEG under the Acte Uniforme de l'OHADA is therefore established and in particular with regard to the provisions of Article 29 thereof.

- That if there existed any grounds which could affect the validity of the said judgment, with regard to respecting the formalities of Article 29 cited above, the former officers of the Company should have raised them in due time before the competent jurisdiction in Equatorial Guinea. They cannot today attempt to bring up points of this nature which are evidently (i) too late, (ii) before the wrong jurisdiction and (iii) in any case unfounded.

[63]    The liquidator has further confirmed as follows:

- To have proceeded in accordance with the provisions of the Acte Uniforme de l'OHADA and to have taken the steps provided for under Article 38 of the said act relating to the verifications required of him that the clerk of the Court had completed the formalities relating to the notices and publicity required under Articles 36 and 37.

- To have carried out the formalities of publicity required under the Acte Uniforme de l'OHADA in the newspaper EBANO which fulfils the function of the gazette of legal announcements.

- However he cannot be concerned, legally, by a claim relating to steps which were supposed to be carried out prior to his appointment as liquidator.

[64]    In view of the above, the liquidator requests the Arbitral Tribunal:

- To decide as a preliminary question the issue relating to the representation of FEG and this by way of a preliminary award in accordance with the ICC rules.

- To comply with the arbitral case law which is well established in this area and consequently to « tenir informé et de considérer comme acteur de l'instance arbitrale le mandataire judiciaire ou tout autre organe désigné comme représentant légal de la partie soumise à la procédure collective », (Emmanuel JOLIVET, Quelques exemples de traitement du droit des procédures collectives dans

l'arbitrage, Gazette du Palais, 14 décembre 2006, n° 348, p. 16).

- To ensure, in accordance with the well-established arbitral practice in case of a company which is subject to insolvency proceedings, « *que le demandeur soit désormais assisté ou représenté par les administrateurs ou de mandataires judiciaires compétents* », as confirmed by Professeur Philippe FOUCHARD (Fouchard, Arbitrage et faillite, Revue de l'arbitrage, 1998, n° 3, p. 485).

- Consequently to declare that the only person who has capacity to represent FEG is, contrary to the position maintained by the former directors of the Claimant, not these latter individuals or the company Fitzpatrick International Limited, but is in fact Mr Mamadou BADIANE in his capacity as liquidator of FEG (the Claimant) who has been appointed as such by the competent Court in Malabo.

[65]     Respondent has requested to insert as follows in relation to issues to be determined by the Arbitral Tribunal: "The Tribunal will also decide whether the Claimant committed any breaches in its performance of the Contract and in particular in its abandonment of performance thereunder, if the termination of the Contract by the Claimant should be considered well-founded and justified, if the Claimant's claim to damages against the Defendant is well-founded and if so to decide upon the quantum; if the Respondent's counterclaim is well-founded and if the Respondent is entitled to damages for loss and damage caused by the breaches of the Claimant and if so decide upon the quantum; to decide which party should pay the Arbitration costs and legal costs."

## VII.   PLACE OF ARBITRATION

[66]     Pursuant to the decision of the ICC Court at its session of January 17, 2007, the place of arbitration is Paris, France.

## VIII.   APPLICABLE PROCEDURAL RULES

[67]     By agreement of the parties, the rules governing the proceedings of this arbitration shall be the Rules of Arbitration of the International Chamber of Commerce and, where these rules are silent, by any rules which the parties or failing them the Arbitral Tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

## IX.   APPLICABLE SUBSTANTIVE LAW

[68]     By virtue of Article 17 (1) of the ICC Arbitration Rules, the parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply the rules of law which it determines to be appropriate. Respondent considers that the law of Equatorial Guinea (including the OHADA law) is the most appropriate, given that it is the national law common to the parties and the law of the place of performance.

## X.   LANGUAGE

[69]     Pursuant to the decision of the Arbitral Tribunal communicated to the parties on October 29, 2007, the language of the arbitration proceedings is the English language. This implies that communications by the Arbitral Tribunal, the Terms of Reference, Procedural Orders and awards will be in English. In other respects, the Tribunal will take a flexible attitude as to English or French as

languages of communication by the parties, briefs, witness statements or expert reports but may order translations or interpretations into English.

## XI.    TIME SCHEDULE OF THE ARBITRATION

[70].   By virtue of Article 18 (4) of the ICC Arbitration Rules, the Arbitral Tribunal shall establish in a separate document, after consultation with the parties, a provisional timetable that it intends to follow for the conduct of the arbitration and shall communicate it to the ICC Court and the parties. The provisional timetable will account for the bifurcation of the preliminary issues (i.e., legal representation and jurisdiction) from the arbitration proceedings on the merits.

[71]   Extensions of time shall, upon the application of a party or on its own motion and before or after the expiry of a time limit, be granted by the Arbitral Tribunal in exceptional cases only, as determined by the Tribunal in its discretion or as agreed between the parties.

## XII.    VAT

[72]   Insofar and to the extent that the fees of the arbitrators are subject to VAT according to the applicable tax laws, the parties, in accordance with Article 2, paragraph 9 of Appendix III of the ICC Arbitration Rules, are responsible to pay the estimated amount of VAT to the Arbitrators concerned on first demand upon presentation by the Arbitrators of relevant documentation. Payment of VAT may be operated by means of the ICC VAT facility at the request of the arbitrators.

SIGNED in seven-fold by:

THE PARTIES

Claimant                                    Respondent


~~Davies Arnd Coop~~            ~~Nave Ng. Bank~~
(signature)                                 (signature)

Name: MR. D. WEARE          Name: N. BADIANE
Position: PARTNER                Position: Jyndic LBB FEG
Date: 26.3.06                        Date: 02-04-08


                                            Respondent.
                                            Name : BOURGI Rosseck.
_____            Position : Counsel of the
(signature)                                 Republic of Equatorial Guinea
                                            Date : 10/04/08
Name: _____
Position: _____
Date: _____


                                            and HEMPACE
                                            Joint Counsel of Equatorial Guinea
                                            Partner Penlaw.
                                            ~~Pei Pal~~
                                            10.4.08 -

THE ARBITRAL TRIBUNAL

(signature)
Mr. Gwyn Owen
Co-Arbitrator
Date : 17 : 04 : 2008

(signature)
Prof. Philippe Leboulanger
Co-Arbitrator
Date : 12 | 04 | 2008

(signature)
Prof. Dr. Filip De Ly
Chairman
Date: 25/04/2008



**International Court of Arbitration** ● **Cour internationale d'arbitrage**

# AWARD

**ICC International Court of Arbitration** ● **Cour internationale d'arbitrage de la CCI**
38 Cours Albert 1er, 75008 Paris, France
Tel +33 (0)1 49 53 28 28  Faxes +33 (0)1 49 53 29 29 / +33 (0)1 49 53 29 33
E-mail arb@iccwbo.org  Website www.iccarbitration.org

−65−

# ICC INTERNATIONAL COURT OF ARBITRATION

## CASE No. 14576/CCO/JRF/GZ

### FITZPATRICK EQUATORIAL GUINEA LIMITED

(Equatorial Guinea)

vs/

### THE REPUBLIC OF EQUATORIAL GUINEA

(Equatorial Guinea)

This document is an original of the Partial Award rendered in conformity with the Rules of Arbitration of the ICC International Court of Arbitration.

May 14, 2009

# AWARD ON PRELIMINARY ISSUES

## ARBITRATION

## UNDER THE RULES OF ARBITRATION OF THE INTERNATIONAL CHAMBER OF COMMERCE

## CASE ICC 14576/CCO/JRF/GZ

BETWEEN

FITZPATRICK EQUATORIAL GUINEA LIMITED

- CLAIMANT -

and

THE REPUBLIC OF EQUATORIAL GUINEA

- RESPONDENT -

# TABLE OF CONTENTS

List of Abbreviations

I.     Proceedings

II.     Summary of Facts

III.     Claims and Arguments of the Parties

         III.1    Claimant's Position as Advanced by the Management of FEG
         III.2    Claimant's Position as Advanced by its Receiver
         III.3    Respondent's Position

IV.     Analysis of the Arbitral Tribunal

         IV.1    Place of Arbitration
         IV.2    Applicable Procedural Rules
         IV.3    Language of the Arbitration
         IV.4    Law applicable to the Merits
         IV.5    Jurisdiction
         IV.6    Standing of FEG's Management and of the Receiver
         IV.7    Further Proceedings and Costs

2

## LIST OF ABBREVIATIONS

| | |
|---|---|
| Answer | Respondent's Answer to the Request for Arbitration |
| C-X | Claimant Exhibit where X stands for the Exhibit Number |
| Claimant | Fitzpatrick Equatorial Guinea Limited |
| Contract | Contract dated February 17, 2004 |
| FEG | Fitzpatrick Equatorial Guinea Ltd. |
| FIL | Fitzpatrick International Ltd. |
| ICC | International Court of Arbitration of the International Chamber of Commerce |
| Memorial FEG | Memorial of the management of FEG dated June 6, 2008 |
| R-X | Respondent Exhibit where X stands for the Exhibit Number |
| Respondent | The Republic of Equatorial Guinea |
| RfA | Request for Arbitration |
| ToR | Terms of Reference |

3

# IN THE ARBITRATION UNDER THE RULES OF ARBITRATION OF THE INTERNATIONAL CHAMBER OF COMMERCE (CASE ICC 14576/CCO/JRF/GZ)

BETWEEN:

Fitzpatrick Equatorial Guinea Ltd., a company existing under the laws of Equatorial Guinea and registered in Malabo under number 211, Malabo, Equatorial Guinea, hereinafter referred to as "FEG" or as "Claimant";

Claimant is allegedly represented in this arbitration by its attorneys, Mr. Ponciano Mbomio Nvó, Cabinete Juridico Ponciano Mbomio Nvó, c/Enrique Nvó, Apartado 424, Malabo, Equatorial Guinea, Fax: +240- 09 45 23, e-mail: mbomio_ponciano@yahoo.es and, until April 10, 2008, Mr. David Weare of the firm Davies Arnold Cooper, 6-8 Bouverie Street, London EC4Y 8DD, United Kingdom, e-mail: dweare@dac.co.uk, Telephone +44-20-7936 2222, Facsimile: +44-20-7936 2020 and, after April 10, 2008, Mr. Tom Sprange, Steptoe & Johnson, 99 Gresham Street, London EC2V 7NG, e-mail: tsprange@steptoe.com, Telephone +44-20-7367 8000, Facsimile: +44-20-7367 8001

and/or

Mr. Mamadou Badiane, Receiver in the insolvency proceedings of Claimant, 31, rue Amadou Assane N'doyé, BP 3895 Dakar, Senegal, e-mail: Mamadou.badiane@wanadoo.fr, Telephone +221-822 29 23, Facsimile: +221-822 23 50.

The subject of court representation on behalf of Claimant is contested and will be dealt with below.

AND

The Republic of Equatorial Guinea, represented by the Minister for Infrastructure and Urban Development, rue Argelia, Malabo, Republic of Equatorial Guinea, hereinafter referred to as "Respondent".

4

Respondent is represented in this arbitration by its duly authorised attorneys, Mr. H. Page, Penlaw International Law Firm, 23 rue d'Anjou, 75008 Paris, France, e-mail h.page@penlaw.fr , Telephone: +33-1-44 51 59 70, Facsimile: +33-1-44-51 59 71 and Mr. Rasseck Bourgi, 10, rue du Chevalier de Saint-George, 75001 Paris, France, e-mail: rasseck.bourgi@wanadoo.fr , Telephone: +33-1-53 96 90 90, Facsimile: +33-1-53 96 98 98.

## THE FOLLOWING AWARD ON PRELIMINARY ISSUES IS RENDERED

I.     Proceedings

1.     On February 17, 2004, Claimant and Respondent contracted for the construction of a motorway between the airport of Malabo and the town of Ela Nguema on the island of Bioko, Equatorial Guinea (hereinafter referred to as the "Contract").

2.     Following a dispute arising out of the Contract, Claimant terminated the Contract on March 14, 2005. Respondent objected to the termination of the Contract. Respondent considers that the termination was a wrongful repudiation and without justification. In April 2005, Respondent arranged for an (independent) survey to be carried out by Mr. Paul Battrick, a Chartered Quantity Surveyor, a Fellow of the Royal Institute of Chartered Surveyors, a Member of the Chartered Institute of Arbitrators and a CEDR Accredited Mediator.

3.     The Parties have been unable to find an amicable solution to their disputes, including at a meeting called to that effect pursuant to Article 40 of the Contract on May 13, 2005.

4.     On June 9, 2006, Claimant submitted to Respondent its claim for additional moneys due under the contract, or as damages for breach of contract, asking for a reply within 60 days which allegedly was not received.

5

5.    On September 6, 2006, Claimant filed a Request for Arbitration (hereinafter referred to as "RfA") against Respondent with the International Chamber of Commerce, in which it sought: (i) a monetary claim for an amount of CFA Francs 14,939,299,635-, being additional moneys due under the contract, or as damages for breach of contract; (ii) reimbursement of its legal costs and associated expenses of pursuing the arbitration, together with the costs and fees charged by the International Court of Arbitration of the International Chamber of Commerce (hereinafter referred to as the "ICC") and the arbitral tribunal. Claimant reserved its right to revise the quantum of its claim in the course of the arbitration, whether to take account of an increased entitlement to recover interest, or otherwise. Claimant's preference was for the dispute to be settled by a sole arbitrator, for the place of arbitration to be Paris, France and for the language of the arbitration to be English.

6.    By a faxed letter dated November 9, 2006, the ICC confirmed that the Request for Arbitration had been received by the Respondent on October 4, 2006 and that the 30 day time limit for the Respondent's Answer had expired on November 6, 2006 and decided to submit the matter to the ICC Court in order for the Court to decide whether or not this matter should proceed. By fax dated December 7, 2006, the ICC granted Respondent ten further days to file its comments.

7.    On December 19, 2006, Respondent filed its Answer to Claimant's Request for Arbitration, in which it contested jurisdiction for an arbitral tribunal and nominated Professor Philippe Leboulanger (address: 5, rue de Chaillot, 75116 Paris, France) as co-arbitrator for the event that an arbitral tribunal of three persons were to be composed and without prejudice to such contention.

8.    On January 2, 2007, Claimant appointed Mr. Gwyn Owen (address: Ashdale House, Higher Penley, Wrexham LL13 0NB, United Kingdom) as co-arbitrator for the event that an arbitral tribunal of three persons were to be composed.

9.    On January 25, 2007, the ICC informed the parties that the ICC International Court of Arbitration at its session of January 19, 2007 had fixed Paris, France as the place of arbitration and had decided that a three-member arbitral tribunal was to be

6

constituted and that, in view of Respondent's jurisdictional objection, the arbitration was to proceed in accordance with Article 6 (2) of the ICC Arbitration Rules.

10.  By a letter dated January 25, 2007, Claimant responded to Respondent's jurisdictional objections and also noted that it had not received a full copy of the "Expert Report" prepared by Paul Battrick and attached to Respondent's letter of December 19, 2006. By a letter dated January 30, 2007, Respondent allegedly declined to respond to Claimant's arguments. Respondent asserts in this respect that the full report has been sent several times including to the ICC and Claimant's Counsel.

11.  By a letter dated February 12, 2007, *inter alia*, Claimant noted that its previous request for a full copy of the "Expert Report" prepared by Paul Battrick had not been responded to.

12.  On February 26, 2007, the ICC informed the parties that the Secretary General of the ICC International Court of Arbitration had confirmed the nomination of the co-arbitrators.

13.  On February 14, 2007, Respondent informed the ICC that it intended to file a counterclaim for a minimum of 11.1 billion CAF in relation to the alleged wrongful termination of the Contract by Claimant; any such amount to be increased with additional costs related to completion of the project by different companies and delays caused.

14.  On March 7, 2007, the co-arbitrators confirmed in writing that they had nominated Professor Filip De Ly, a Belgian citizen resident at Utrecht, Johan Buziaulaan 33, The Netherlands as Chairman of the Arbitral Tribunal. On March 12, 2007, the ICC invited Professor De Ly to accept this nomination which was done in writing on March 17, 2007.

15.  By letter dated June 13, 2007, the ICC informed the parties that the Secretary General of the ICC Court, on May 23, 2007, had confirmed Professor Filip De Ly

7

as Chairman of the Arbitral Tribunal and that the file was being transmitted to the Arbitral Tribunal.

16. On July 18, 2007, the Arbitral Tribunal gave a number of procedural directions regarding the management of the case.

17. By letters dated July 19, 23 and 24, 2007, the parties expressed their agreement in relation to exchanges by e-mail as well as their arguments regarding the language of the proceedings.

18. By Respondent's letter dated July 24, 2007, the Arbitral Tribunal was informed that insolvency proceedings had been opened in Equatorial Guinea against Claimant and that Claimant had been declared insolvent on February 22, 2007 by a decision of the Court in Malabo, Equatorial Guinea with the appointment of Mr. Mamadou Badiane as receiver.

19. On July 27, 2007, Mr. Weare replied to Respondent's letter dated July 24, 2007 in relation to the insolvency proceedings against Claimant indicating *inter alia* that (1) Claimant understood that the proceedings were instigated by Respondent; (2) Claimant and its directors did not receive notification of the insolvency proceedings; (3) Claimant and its directors had no opportunity to attend any hearings in the insolvency proceedings or to present a defence; (4) Claimant was not notified of this declaration of insolvency until 15 May 2007, some three months after the liquidator had purportedly been appointed; (5) Claimant had instituted proceedings in Equatorial Guinea against the February 22, 2007 insolvency order and that Claimant did not recognize the insolvency proceedings.

20. On July 28, 2007, the Tribunal received a letter dated July 27, 2007 (with annexes) of Mr. Badiane as Claimant's receiver in which Mr. Badiane requested to be informed about the arbitration proceedings and indicated that he was the only person authorized to represent Claimant.

21. On August 1, 2007, Respondent replied to the letters referred to above.

8

22. On August 2, 2007, the Tribunal suspended the arbitration proceedings until September 15, 2007 in order to obtain clarification as to Claimant's standing and representation in the arbitration proceedings.

23. On August 10, 2007, the ICC extended the time-limit for establishing the Terms of Reference (hereinafter referred to as "ToR") until October 31, 2007.

24. On September 14, 2007, Mr. Weare filed a letter with the Tribunal as to the standing of Claimant in the arbitration proceedings.

25. On September 18, 2007, the Tribunal extended the suspension until further notice and invited Respondent to reply to the September 14, 2007 letter by September 25, 2007.

26. On September 25, 2007, Respondent filed its reply (with annexes) to the September 14, 2007 letter.

27. On September 26, 2007, the Tribunal also received a note of Mr. Badiane indicating that Mr. Badiane as Claimant's receiver considered that he alone was authorized to represent Claimant.

28. On October 5 and 9, 2007, the Tribunal received further e-mails from Mr. Badiane (with annexes) stating that the insolvency proceedings had complied with all legal requirements in Equatorial Guinea and that the February 22, 2007 insolvency order had become final since no means of recourse against the order had been filed within the time limits imposed by law.

29. On October 12, 2007, the ICC extended the time-limit to establish the Terms of Reference until December 31, 2007.

30. On October 29, 2007, the Arbitral Tribunal informed the parties of its decisions as to the language of the proceedings, the drafting of the Terms of Reference and the management of the case.

9

31. On December 6, 2007, Mr. Weare sent a fax to Mr. Badiane with a number of questions regarding the insolvency proceedings against Claimant in Equatorial Guinea.

32. On December 7, 2007, the ICC extended the time-limit for establishing the Terms of Reference until February 29, 2008.

33. On December 15, 2007, Mr. Badiane replied to the December 6 fax reiterating that the insolvency proceedings complied with the laws of Equatorial Guinea and that the insolvency order had become final.

34. On February 1, 2008, the Tribunal received a fax from Mr. Weare requesting that correspondence to Mr. Mbomio Nvó be sent by e-mail rather than by fax.

35. On February 18, 2008, the ICC informed the Arbitral Tribunal that the ICC Court, at its session of February 14, 2008, had extended the time period for establishing the Terms of Reference until April 30, 2008.

36. On February 22, 2008, the Arbitral Tribunal sent draft Terms of Reference to the parties for their review and comments. On the basis of the parties' replies dated March 7, 12 and 14, 2008, the Tribunal finalized the Terms of Reference and sent those to the parties for signature on March 21, 2008. Respondent in the Terms of Reference confirmed its intention to file a counterclaim and formulated the counterclaim in conditional terms (*i.e.*, subject to the Arbitral Tribunal having jurisdiction to hear the case).

37. Also on February 22, 2008, the Arbitral Tribunal informed the Parties that the case was to be bifurcated between preliminary issues and merits. As to preliminary issues, it identified jurisdiction and the standing of the receiver as such issues.

38. On March 21, 2008, Respondent filed a copy of a proxy by his Excellency the Prime Minister of the Republic of Equatorial Guinea dated November 28, 2006, authorizing Mr. Page and Mr. Bourgi to represent Respondent in these arbitration proceedings.

10

39. On April 10, 2008, the Arbitral Tribunal was informed that Davies Arnold Cooper was no longer acting for the management of FEG and that it has been replaced by Mr. Sprange of Steptoe & Johnson while Mr. Mbomio Nvó would continue to remain as co-counsel.

40. On April 11, 2008, the ICC extended the time-limit for establishing the Terms of Reference to June 30, 2008.

41. After deliberation and consultation with the Parties and taking into account their observations dated April 21, 24 and 25, 2008, the Arbitral Tribunal – pursuant to Article 18 (4) of the ICC Rules of Arbitration – on April 25, 2008 established the provisional procedural timetable for the arbitration which took into account the bifurcation of the proceedings and the up-front treatment of the two preliminary issues.

42. On May 2, 2008, the ICC acknowledged receipt of the Terms of Reference and informed the Parties and the Arbitral Tribunal that the six month period for rendering the award, subject to the power of the ICC Court to extend, started to run as of April 25, 2008, the date of the last signature of the Terms of Reference.

43. On May 16, 2008, the ICC informed the Parties and the Arbitral Tribunal that the Terms of Reference signed by the Parties and the Arbitral Tribunal as well as the Procedural Timetable had been transmitted to the ICC International Court of Arbitration at its session of May 16, 2008 pursuant to Article 18 of the ICC Rules of Arbitration.

44. The management of FEG and the receiver filed their statements on preliminary issues of legal representation and jurisdiction on June 6, 2008. The management's statement (hereinafter referred to as "Memorial FEG") was accompanied by legal opinions of Professor Carrington, Professor Lalive and Mr. Martor and by witness statements of Mr. Cookson (FEG's Commercial Director).

11

45. On July 4, 2008, Respondent filed its statement of legal representation and jurisdiction in compliance with the procedural timetable.

46. A hearing on the preliminary issues was held in Paris on September 9, 2008.

47. On behalf of the management of FEG, Mr. P. Fitzpatrick was present as well as counsel Mr. Sprange, Mr. Brown and Mr. Dzhazoyan. FEG was also represented by its receiver Mr. Badiane assisted by Mr. Diouf of the Paris bar. Respondent was represented by his Excellency, Mr. Salvador Ondó Ncumu Oye, Minister of Justice of the Republic of Equatorial Guinea, assisted by Mr. Ondo Ndong Mofuman, as well as by counsel Mr. Page, Mr. Bourgi, Mr. Ladhari and Mr. Slim.

48. At the hearing, two witnesses were heard: Mr. Martor and Mr. Cookson.

49. A transcript of the hearing was made.

50. Pursuant to the directions of the Arbitral Tribunal at the end of the hearing, the Parties filed post-hearing letters on September 24, 2008 regarding specific issues identified by the Tribunal at the end of the hearing. On that same date, Claimant also filed its suggested corrections to the hearing transcript as well as its costs submission (with exhibits).

51. On September 30, 2008, Claimant filed its comments to Respondent's costs submission and to the costs submission of the receiver as well as its comments to Respondent's suggested corrections to the transcript.

52. On October 3, 2008, Respondent filed its further submissions on costs, on the transcript and on the issue of the interpretation of the arbitration clause. On that same date, Mr. Sprange for the management of FEG objected to the submission as they related to the interpretation issue and Respondent replied to the objection also on October 3, 2008.

12

53.    On October 10, 2008, January 22, 2009 and April 1, 2009, the ICC extended the time-limit to render an award to January 31, 2009, April 30, 2009, respectively July 31, 2009.

54.    The Parties not having formulated or maintained objections as to how the Arbitral Tribunal has handled the arbitration proceedings, any such objections do not need to be discussed.

55.    By virtue of Article 22 (1) of the ICC Rules, the Arbitral Tribunal declared the proceedings in respect of the issues dealt with in this Award on Preliminary Issues closed on March 2, 2009.

56.    In its session dated April 30, 2009, the ICC Court approved the Award by virtue of the powers of the ICC Court under Article 27 of the ICC Rules.

II.    <u>Summary of Facts</u>

57.    This section summarizes the relevant facts on which the parties are in agreement or which have sufficiently been proven and/or insufficiently been contested by either party. As this is only an award dealing with two preliminary issues (*i.e.*, the issues of the Arbitral Tribunal's jurisdiction over the disputes and of the standing of either FEG's management or of its receiver), the discussion below of the relevant facts is limited to those facts that are relevant for the disposition of the two preliminary issues and does not attempt to summarize facts as to the merits of the case.

58.    On February 17, 2004, Claimant and Respondent contracted for the construction of a motorway between the airport of Malabo and the town of Ela Nguema on the island of Bioko, Equatorial Guinea. Claimant was in this respect incorporated as a special purpose company under the laws of Equatorial Guinea to perform the Contract; 75% of its shares are owned by Fitzpatrick Gibraltar Limited (Memorial FEG ¶ 10).

13

59.  Following a dispute arising out of the Contract, Claimant terminated the Contract on March 14, 2005, allegedly for non-payment of progress payments by Respondent. Respondent objected to the termination of the Contract. Respondent considers that the termination was a wrongful repudiation and without justification. In April 2005, Respondent arranged for an (independent) survey to be carried out by Mr. Paul Battrick, a Chartered Quantity Surveyor, a Fellow of the Royal Institute of Chartered Surveyors, a Member of the Chartered Institute of Arbitrators and a CEDR Accredited Mediator.

60.  The Parties have been unable to find an amicable solution to their disputes.

61.  Claimant's management is represented by Fitzpatrick International Ltd. (hereinafter "FIL") under a Power of Attorney and a Service Agreement both dated March 8, 2006 authorizing FIL to represent the interests of FEG.

62.  The Parties have requested the Arbitral Tribunal to take into account the broader ramification of their disputes when assessing the preliminary issues. Claimant's management alleges that Respondent has engaged in improper actions following the termination of the Contract including conservatory seizure of FEG's plant, equipment and property, placement of its staff under house-arrest, confiscation of passports of its expatriate staff preventing it to leave the country, debarring of its local counsel and a sham insolvency proceeding against FEG. FEG's management has also accused Respondent of not observing separation of powers between its executive and judicial branches of government, non-observance of the rule of law and corruption. The Arbitral Tribunal understands these accusations as indications that Respondent allegedly did not accept the termination of the Contract and took whatever possible action to seize the assets of FEG and to avoid its liabilities under the Contract. Also, Claimant has indicated that the alleged lack of independence of the judiciary in Equatorial Guinea are to be taken into account regarding the disposition of the preliminary issues in the sense that Article 40 of the Contract is to be interpreted as giving authority to this Arbitral Tribunal under the ICC Arbitration Rules as a device to protect FEG against dispute resolution in the courts of Equatorial Guinea and in the sense that the insolvency order by the Malabo

14