IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FITZPATRICK INTERNATIONAL LIMITED, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:12-CV-01300 |
| THE REPUBLIC OF EQUATORIAL GUINEA, | § § § § | |
| Defendant. | § § | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND BRIEF IN SUPPORT**

GREENBERG TRAURIG, LLP

Gregory J. Casas
Texas Bar No. 00787213
S.D. Tex. Bar No. 16213
300 W. 6th Street, Suite 2050
Austin, Texas 78701
Tel: 512.320.7238
Fax: 512.320.7210

Attorney-In-Charge for Defendant
the Republic of Equatorial Guinea

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

III. SHORT SUMMARY OF ARGUMENT ........................................................................... 2

IV. FACTS ................................................................................................................................ 3

   A. Summary ........................................................................................................................ 3

   B. Dispute Between FEG and Equatorial Guinea .............................................................. 4

   C. ICC Arbitration and Equatorial Guinean Insolvency Proceedings ................................ 5

V. ARGUMENT ...................................................................................................................... 9

   A. Plaintiff Has No Legally Cognizable Interest in the Arbitral Award and Therefore, Lacks Article III Standing ................................................................................................ 9

      1. Plaintiff Has the Burden to Establish that It Has the Legally Cognizable Interest Necessary to Support Standing ........................................................................ 9

   B. Under the Laws of the United States and Equatorial Guinea, Neither the Bankrupt-Assignor Nor the Assignee-Plaintiff Has Any Legally Cognizable Interest in the Arbitral Award ............................................................................................................... 11

      1. Assignee-Plaintiff's Interest Can Be No Greater than the Interest of the Bankrupt-Assignor .......................................................................................................... 11

      2. Bankrupt-Assignor's Interest in the Arbitral Award Was Lawfully Extinguished in Bankruptcy ..................................................................................................... 11

VI. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Cases

Anderson v. Acme Markets, Inc.,
  287 B.R. 624 (E.D. Pa. 2002) ................................................................................... 12

Barrera-Montenegro v. United States,
  74 F.3d 657 (5th Cir. 1996) ........................................................................................ 9

Biesek v. Soo Line Railroad Co.,
  440 F.3d 410 (7th Cir. 2006) ............................................................................... 2, 11

Board of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.,
  563 U.S.___, 131 S.Ct. 2188 (2011) ......................................................................... 11

Cain v. Hyatt,
  101 B.R. 440 (E.D. Pa. 1989) ................................................................................... 12

Clark v. Tarrant County,
  798 F.2d 736 (5th Cir. 1986) ...................................................................................... 9

Cusano v. Klein,
  264 F.3d 936 (9th Cir. 2001) .................................................................................... 12

Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt.,
  364 F.3d 269 (5th Cir. 2004) .................................................................................... 10

FW/PBS, Inc. v. Dallas,
  493 U.S. 215 (1990) .................................................................................................. 10

In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,
  668 F.3d 281 (5th Cir. 2012) ................................................................................. 2, 9

Int'l Nutrition Co. v. Horphag Research Ltd.,
  257 F.3d 1324 (2001) ................................................................................................ 11

Lewis v. Weyerhaeuser Co.,
  141 F. App'x 420 (6th Cir. 2005) .......................................................................... 2, 11

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) .................................................................................................. 10

Lurato v. United States,
  No. 8:12-CV-1648, at 7 (M.D. Fla. Nov. 26, 2012) .................................................. 11

Menchaca v. Chrysler Credit Corp.,
  613 F.2d 507 (5th Cir. 1980) ...................................................................................... 9

Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,
    700 F.3d 185 (5th Cir. 2012) .................................................................................................. 9

Paterson v. Weinberger,
    644 F.2d 521 (5th Cir. 1981) .................................................................................................. 9

Ramming v. United States,
    281 F.3d 158 (5th Cir. 2001) .................................................................................................. 9

Rhode Island Hosp. Trust Nat'l Bank v. The Ohio Casualty Insur. Co.,
    789 F.2d 74 (1st Cir. 1986) ................................................................................................... 11

Schafer v. Decision One Mortg. Corp.,
    No. 08-5653, 2009 U.S. Dist. LEXIS 45474 (E.D. Pa. May 29, 2009) .................................. 12

Sierra Club v. EPA,
    292 F.3d 895 (D.C. Cir. 2002) .............................................................................................. 10

Simon v. Eastern K. Welfare Rights Org.,
    426 U.S. 26 (1976) ................................................................................................................ 10

Steel Co. v. Citizens For Better Env't,
    523 U.S. 83 (1998) ................................................................................................................ 10

Summers v. Earth Island,
    Instit., 555 U.S. 488 (2009) ................................................................................................... 9

United States v. $38,000.00 Dollars in U.S. Currency,
    816 F.2d 1538 n.12 (11th Cir. 1987) .................................................................................... 10

Statutes

Uniform Act, Article 15 ................................................................................................................ 3

Uniform Act, Article 25 ........................................................................................................... 5, 12

Uniform Act, Article 33 .............................................................................................................. 13

Uniform Act, Article 41-51 .......................................................................................................... 3

Uniform Act, Article 43 .............................................................................................................. 13

Uniform Act, Article 147-149 ...................................................................................................... 3

11 U.S.C. §§ 541(a)(1), 701 ........................................................................................................ 11

Rules

RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE ............................. 1, 2, 9

Treatise

*Jon Brooks & Adrien Rangiroa, Bankruptcy in Francophone Africa: OHADA's Uniform Act in Theory and Practice*, 2011 WL 190738 at *4 (Jan. 2011).......................................................... 2, 12

Restatement (Second) of Contracts § 336(1) (1981) ............................................................ 11

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND BRIEF IN SUPPORT**

Plaintiff seeks to confirm an arbitral award that it does not own and never has owned.  As such, it lacks Article III standing and accordingly, this Court lacks subject matter jurisdiction.  Moreover, Plaintiff's actions here are duplicative of, and perhaps even an attempt to avoid, proceedings in the District and Appellate Courts in Paris, France regarding the legitimacy of the award at issue.  Accordingly, Defendant the Republic of Equatorial Guinea respectfully submits this Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and Brief in Support.

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed its Motion to Confirm Arbitral Award on April 24, 2012 (DKT # 1).  After months of attempting proper service on a foreign sovereign and failing, it filed a Motion for Judicial Assistance For Service of Process on Foreign Sovereign (DKT # 7) on June 13, 2012 and a Second Motion for Judicial Assistance (DKT # 14) on October 17, 2012.  While that second motion was pending, Plaintiff delivered via international courier a packet of material upon the Secretary General of the Ministry of the Interior of the Republic of Equatorial Guinea on October 31, 2012.  Magistrate Jude Johnson granted the Second Motion for Judicial Assistance on January 22, 2013 (DKT #21).

Though the delivery of the materials upon the Secretary General likely does not constitute service because it was effected before the Court signed the Order granting Plaintiff's Second Motion for Judicial Assistance, Equatorial Guinea is willing to deem the delivery as proper service because by challenging service, it would be wasting the parties' and the Court's resources for a correctible defect.  Moreover, and regardless of whether service was proper, a more serious problem with Plaintiff's Motion to Confirm Arbitral Award exists that *cannot* be corrected, and which requires the Court to grant this Motion to Dismiss.

1

On January 16, 2013, the parties filed an Agreed Motion for Extension of Time to Answer or Otherwise Respond, Briefing Schedule and Motion for Continuance of the January 25, 2013 Scheduling Conference (DKT # 18), which the Court granted on January 17, 2013 (DKT # 19).  On February 15, 2013, the Court granted a Second Agreed Motion for Extension of Time to File and Agreed Briefing schedule (DKT # 26).  Defendant now files its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1).

## II. STATEMENT OF ISSUES TO BE DECIDED

At issue is whether Plaintiff has standing to bring its Complaint and Motion to Confirm Arbitral Award.  Under both United States and Equatorial Guinean bankruptcy laws, Plaintiff has no ownership or legal interest in the arbitral award at issue.  Rather, the bankruptcy estate and the estate's creditors actually own the legal interest in the Award.  As a result, Plaintiff has no standing to confirm this award in this, or any, court.  *See Biesek v. Soo Line Railroad Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005); Organization for the Harmonization of Business Law of Africa ("OHADA"), *Uniform Act Organizing Collective Proceedings for Wiping Off Debts* ("Uniform Act"), Part II, Chapter III, Article 33, Part II, Chapter II, Section I, Articles 39-43, Chapter 33;[1] *Jon Brooks & Adrien Rangiroa, Bankruptcy in Francophone Africa:  OHADA's Uniform Act in Theory and Practice*, 2011 WL 190738 at *4 (Jan. 2011).  The question of whether a party has standing is a matter of law for the court to decide.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

## III. SHORT SUMMARY OF ARGUMENT

Plaintiff lacks standing to bring this Motion.  FEG was declared bankrupt by the District Court of Malabo in 2007.  All rights, claims, or benefits that FEG owned at the time of its

---

[1]  Adopted by Equatorial Guinea in full on October 4, 1998.  Cited portions are attached as Ex. H.  The full text can be downloaded at:  http://www.ohada.com/actes-uniformes/588/1079/preliminary-part.html.

bankruptcy became the property of the bankrupt estate under the control of the officially appointed Receiver. Accordingly, FEG could not assign any rights or interests to Plaintiff which would allow it to bring this Motion. Indeed, FEG did not even have authority or standing to prosecute the arbitration underlying this action. Accordingly, the Government of the Republic of Equatorial Guinea asks this Court to deny Plaintiff's Motion and dismiss this action.

## IV.  FACTS

### A.  Summary

Fitzpatrick Equatorial Guinea Ltd. ("FEG"), an Equatorial Guinean corporation, obtained the original arbitral award at issue in April 2012.  However, many years before the award was issued, in September 2005, FEG ceased paying its debts in Equatorial Guinea. Under Equatorial Guinean law, when this occurred FEG became insolvent and all assets of FEG, if any, became subject to the jurisdiction of the Bankruptcy Court in Equatorial Guinea. See Uniform Act at Article 15. One year later, even though it was legally insolvent, FEG instituted the ICC arbitration proceedings. However, during the initial stage of the arbitration, before the arbitrators were even empanelled, the bankruptcy court in Equatorial Guinea formally declared FEG insolvent, and ordered that all of its assets be placed under the control of the bankruptcy receiver. Following the judicial finding of insolvency, the Receiver was charged with handling the affairs of the bankrupt estate for the benefit of the estate's credit holders. His tasks included the prosecution or settlement of the claims asserted in the arbitration proceeding that resulted in the arbitral award at issue. *See* Uniform Act at Part II, Chapter II, Section II, Articles 41-51; Chapter V, Section II, Subsection I, Articles 147-149.

FEG appealed the distribution and insolvency orders to the Supreme Court of Justice of the Republic of Equatorial Guinea. The Supreme Court dismissed the appeal, leaving FEG with

3

nothing to assign to Plaintiff. Plaintiff, therefore, has no cognizable legal interest in the award and lacks rudimentary Article III standing to prosecute this confirmation complaint.

After the Final Award, the Government of the Republic of Equatorial Guinea filed an Opposition to the Award in the Paris District Court. At around the same time, the Receiver filed an Opposition on Behalf of the Bankrupt Estate challenging the District Court's affirmance of the Preliminary Award. The Receiver's and the Government's Oppositions are based on the same theory: that FEG had no authority to bring the arbitration in the first place due to its insolvency. This same theory is the basis for the pending motion to dismiss.

### B. Dispute Between FEG and Equatorial Guinea

On February 2004, FEG, an Equatorial Guinean company, established under the laws of Equatorial Guinea with its corporate registration in Malabo, Republic of Equatorial Guinea, and the Government entered into a contract for the construction of a highway in Equatorial Guinea from the Terminal Building of Malabo Airport to the Roundabout on the road from Riaba to Ela Nguema. During the implementation of the contract, however, multiple disagreements arose between the parties. Ultimately, the Government asserted that FEG failed to meet construction milestones after it had paid FEG a substantial advance. FEG claimed that the Government had failed to make additional payments. Later, in addition to learning other irregularities with regard to FEG itself, the Government also learned that FEG's performance bond had been fraudulently obtained.[2] *See* Final Award dated December 23, 2011 ("Award")[3] at ¶ 39. On March 14, 2005, FEG terminated the contract, but did not return the cash advance. *See* Award on Preliminary

---

[2] The arbitrators concluded that a fraud had been committed but there was insufficient evidence to ascertain the responsible parties. *See* Award at ¶ 143. The arbitrators also chose to disregard FEG's failure to pay its debt, failure to complete the scope of work and abandonment of its operations within Equatorial Guinea. Award at ¶ 112. Further, the Tribunal ignored the fact that FEG was awarded shell company with known assets. *See* Respondent's Rejoinder and Reply in the Counterclaim, filed in the Arbitration February 8, 2012, at p. 6, ¶ 113, attached as Ex. A.

[3] The Award was attached to the Affidavit of Reginald R. Smith dated April 24, 2012, in support of Plaintiff's Motion to Confirm Arbitral Award at ¶¶ 114-195.

Issues, dated May 14, 2009 ("Preliminary Award")[4] at ¶ 2. It also did not complete the construction project nor did it complete the work required in order to receive the advance payment. *Id.* at 112.

### C. ICC Arbitration and Equatorial Guinean Insolvency Proceedings

On September 6, 2006, one year after it was technically insolvent under Equatorial Guinean law due to its cessation of payments, FEG filed a request for arbitration with the International Chamber of Commerce in Paris alleging that Equatorial Guinea breached the parties' contract by failing to pay all sums due under the contract. *See* Award at ¶ 5. On December 8, 2006, the Public Prosecutor in Equatorial Guinea instituted formal insolvency proceedings against FEG in the District Court of Malabo, Equatorial Guinea because FEG was insolvent under Equatorial Guinean law by failing to pay its taxes, failing to pay its subcontractors and failing to pay its employees in Equatorial Guinea. OHADA Uniform Act, Article 25; Award at ¶ 67. As a result of the initiation of the insolvency proceedings, all of FEG's assets, including the claims asserted in the arbitration, came under the control of the Court appointed Receiver, acting as trustee. Uniform Act at Part II, Chapter I, Article 25, *et. seq.*

On February 22, 2007, that Bankruptcy Court in Equatorial Guinea issued a final order finding FEG to be insolvent and ordering the Receiver to distribute FEG's assets, including its contract claim against the Government, to satisfy its creditors in compliance with Equatorial Guinean law. *See* Judgment of the Bankruptcy Court of Equatorial Guinea, dated February 22, 2007, attached as Ex. B; Award at ¶ 8. FEG appealed that final order to the Supreme Court of Justice in Equatorial Guinea, which on October 2, 2007 dismissed the appeal as having been improvidently filed. Under Equatorial Guinean law, the appeal should have been filed with the intermediate appeals court rather than directly with the Supreme Court. *See* Preliminary Award

---

[4] The Preliminary Award was attached to the Affidavit of Reginald R. Smith dated April 24, 2012, in support of Plaintiff's Motion to Confirm Arbitral Award at ¶¶ 66-113.

5

at ¶¶ 70-71. FEG made no attempt to rectify this procedural error by noticing an appeal in the proper court. Uniform Act, Part II, Chapter I, Article 33. The judgment of insolvency is therefore final.

Notwithstanding the bankruptcy proceeding and over objections from the Government of the Republic of Equatorial Guinea and the Receiver, the arbitration in Paris proceeded.[5] On May 14, 2009, the arbitrators issued the Preliminary Award that incorrectly rejected the Government's objections to the arbitration due to the Insolvency Order and the distribution of the claims to the Receiver.

Equatorial Guinea appealed this decision to the Paris District Court and then to the Paris Court of Appeals. As explained below, this appeal is now stayed pending the Opposition filed by the Receiver of FEG's estate.

While the arbitration was pending, and to protect its rights and to enforce the Order of its sovereign bankruptcy court, on August 6, 2010 Equatorial Guinea initiated District Court proceedings in Paris, the situs of the arbitration, to have the Insolvency Order declared enforceable in France. On April 28, 2011, after full briefing by the parties, the Paris District Court declared the insolvency judgment enforceable in France. Judgment of District Court of Paris, rendered April 28, 2011, attached as Ex. C; Final Award at ¶¶ 95, 97.

Despite having knowledge of the Paris District Court's ruling, on December 23, 2011, the arbitrators ignored the ruling of the District Court of Paris and issued their Final Award of

---

[5] The arbitrators, while concluding that the insolvency proceeding was consistent with Equatorial Guinean law, held that the service of process in Equatorial Guinea of the insolvency proceeding did not meet European and French standards and accordingly, the arbitrators refused to permit the Equatorial Guinean Receiver to participate in the arbitration. *See* Award at ¶¶ 146-149, 155-157. As explained below, the Paris District Court ultimately found no fault with the service that was effected in Equatorial Guinea and upheld the legitimacy of the Bankruptcy Order.

€12.287 million plus costs and interest to FEG. FEG had originally requested an award of more than €150 million.[6]

Despite the district and appellate court proceedings in Paris, and with full knowledge of the Paris District Court's ruling in favor of the Insolvency Order issued by the Bankruptcy Court of Equatorial Guinea, which effectively stripped FEG of the authority to bring the arbitration or enforce the Award, on January 7, 2012, FEG attempted to assign its alleged rights and interests in the Arbitral Award to Plaintiff, a British company that is related to FEG. *See* Preliminary Award at 70. At the time of the assignment, however, FEG had no rights or interests in the award because the Bankruptcy Court had already ordered that all of FEG's assets, which included the claims adjudicated in the arbitration, be transferred to the bankrupt estate and distributed for the benefit of creditors. See Ex. B. As explained below, FEG legally had nothing to assign to Plaintiff on January 7, 2012. Consequently, Plaintiff now has nothing to enforce. To make matters worse, Plaintiff then filed the action in this Court to attempt to enforce the Award.

On January 23, 2012, Equatorial Guinea filed an Opposition in the Court of Appeal of Paris to the Final Award, claiming that FEG lacked standing to bring the claims in arbitration due to the ruling of the Bankruptcy Court. *See, generally,* Appeal Pleading No. 1, filed on behalf of the Republic of Equatorial Guinea in the Court of Appeal of Paris, April 23, 2012, setting forth the timeline of filing before the Appeal Court of Paris at p. 6-8, attached as Ex. D. FEG also filed an Opposition to the Paris District Court's ruling that upheld the Bankruptcy Court Order.

---

[6] FEG also asked the arbitrators to order the payment of the award directly to Plaintiff's bank account in London, obviously in an attempt to defraud the Equatorial Guinean bankruptcy proceedings and the estate's creditors. Though the arbitrators were willing to conveniently ignore the Equatorial Guinean bankruptcy court and the Paris District Court, they were not willing to participate in an overt fraud on the bankruptcy estate.

7

On January 30, 2012, the Receiver of FEG's bankruptcy estate, appointed by the Bankruptcy Court in Equatorial Guinea in 2007, filed his Opposition in the Court of Appeal of Paris to the Paris District Court's initial ruling in favor of the Preliminary Award. The Receiver's Opposition claims that FEG lacked standing to bring any claims against Equatorial Guinea due to the ruling of the Bankruptcy Court in Equatorial Guinea. He also asserts that the arbitral tribunal's refusal to allow him to appear in the arbitration on behalf of the estate violated both French and Equatorial Guinean law. He asserts that the Preliminary Award should be reversed and the arbitration should be dismissed because only he, on behalf of the estate, has standing. *See* Ex. D at p. 7, ¶ 28. As support for his Opposition, the Receiver submitted a Certificate of the Registrar of the Trial Court in Malabo, which certifies that FEG was called to Court in the Bankruptcy proceedings in the form required by the Uniform Act of OHADA. *See* Certificate of Convocation attached as Ex. E; Affidavit of Hermenegildo Oyan, attached as Ex. F. If the Receiver's Opposition is sustained, then the Preliminary Award will be vacated and the arbitration will be dismissed.

On December 12, 2012, the Paris District Court recognized the withdrawal of the Opposition claims by the Government and FEG and stayed all proceedings until the Court of Appeal of Paris could rule upon the Receiver's Opposition to the Preliminary Award. See Order of Withdrawal from the Case List dated December 12, 2012, attached as Ex. G. The hearing on that Opposition is scheduled in June 2013. Plaintiff's actions are a flagrant disregard for the Paris Court's authority to decide these matters when it has primary jurisdiction because Paris was the site of the arbitration, and is an attempt to put this Court in a position directly contrary to the authority and jurisdiction of those foreign courts. Notably, Plaintiff fails to brief this Court regarding the status of any of the proceedings in Paris. Plaintiff's lack of candor on this is shocking, to say the least.

Substantively, and as set forth below, Plaintiff has no standing and no authority to bring its Motion to Enforce the Arbitral Award. More significantly, however, Plaintiff's shell game in bringing this action without fully disclosing the pending actions in Paris also provides a procedural basis for this Court to halt these proceedings immediately. Accordingly, Defendant asks the Court to grant this Motion to Dismiss.

## V. ARGUMENT

### A. Plaintiff Has No Legally Cognizable Interest in the Arbitral Award and Therefore, Lacks Article III Standing

#### 1. Plaintiff Has the Burden to Establish that It Has the Legally Cognizable Interest Necessary to Support Standing

"Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286 (internal quotation marks omitted). Lack of subject matter jurisdiction may be found using (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). The Court, therefore, has all the evidence it needs before it to decide whether Plaintiff has standing.

Plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Instit.*, 555 U.S. 488, 493 (2009); *see Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 190 (5th Cir. 2012); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

To support Article III standing, a litigant bears the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (party seeking to invoke jurisdiction of federal court "bears the burden of establishing these elements"); *see FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt.*, 364 F.3d 269, 273 (5th Cir. 2004) ("A plaintiff's failure to establish one of the three elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit."); To do so, it must "support each element of its claim to standing . . ." *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (quoting *Lujan*, 504 U.S. at 561). First, the plaintiff must have suffered an "injury in fact"— "an invasion of a legally-protected interest which is (a) concrete and particularized," and (b) "actual or imminent, not 'conjectural' or 'hypothetical'." *Lujan*, 504 U.S. at 560 (citations omitted) (emphasis supplied). Second, there must be causal relationship between the injury in fact and the conduct at issue. *See id.* And third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Simon v. Eastern K. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *see Steel Co. v. Citizens For Better Env't*, 523 U.S. 83 (1998). Here, Plaintiff is unable to establish, as a matter of law, the first prong of the *Lujan* triad.

To satisfy the standing requirement of Article III, Plaintiff must "make[] a valid claim that [it] has a legally cognizable interest in the property that will be injured if" the court fails to intervene. *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543 n.12 (11th Cir. 1987). Where as here, the property at issue is an arbitral award, the plaintiff only has a "legally cognizable interest," if it has a claim to that award. If a Plaintiff has no claim to the award, then it has no cognizable interest and hence, no standing. That is the case here; the asserted claims and the associated arbitral award were liquidated and distributed through the

estate to the creditors nearly five years before the assignment, leaving FEG with nothing to assign. *See Lurato v. United States*, No. 8:12-CV-1648, at 7 (M.D. Fla. Nov. 26, 2012) (a plaintiff that lacks a legally cognizable property interest has no standing).

> B. **Under the Laws of the United States and Equatorial Guinea, Neither the Bankrupt-Assignor Nor the Assignee-Plaintiff Has Any Legally Cognizable Interest in the Arbitral Award**
>
> > 1. **Assignee-Plaintiff's Interest Can Be No Greater than the Interest of the Bankrupt-Assignor**

It is axiomatic that an assignee's interest in property can be no greater than the interest of assignor. *See* RESTATEMENT (SECOND) OF CONTRACTS § 336(1) (1981); *Rhode Island Hosp. Trust Nat'l Bank v. The Ohio Casualty Insur. Co.*, 789 F.2d 74, 81 (1st Cir. 1986). Where an assignor assigns property that it does not own, the assignee acquires nothing. *See Board of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 563 U.S.___, 131 S.Ct. 2188 (2011). This simple common sense rule, namely that you cannot transfer that which you do not own, is near universal, applying in the United States, the United Kingdom and most civil law countries including France and Equatorial Guinea. *See Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (2001) (discussing French law of assignment). Here, as explained below, FEG as the assignor had nothing to assign to Plaintiff and as a result, Plaintiff acquired nothing.

> > 2. **Bankrupt-Assignor's Interest in the Arbitral Award Was Lawfully Extinguished in Bankruptcy**

Under United States law, once a bankruptcy commences, "all legal or equitable interests of the debtor in property" are held by the trustee. 11 U.S.C. §§ 541(a)(1), 701. The broad scope of § 541 includes causes of action existing at the time the bankruptcy petition is filed. *Biesek v. Soo Line Railroad Co.*, 440 F.3d at 413 (7th Cir. 2006) ("Pre-bankruptcy claims are part of debtors' estates: this . . . claim therefore belongs to the Trustee"); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x at 424 (6th Cir. 2005) ("It is well-settled that a cause of action is an asset that must

11

be scheduled under § 521(1)."); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001); *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 628 (E.D. Pa. 2002) (citing cases). It is the trustee who "has capacity to sue and be sued." *Id*. at § 323(b). Once a trustee has been appointed, the Chapter 7 debtor no longer has standing to pursue a legal claim that existed at the time the petition was filed because "only the trustee . . . has the authority to prosecute and/or settle such causes of action." *Schafer v. Decision One Mortg. Corp.*, No. 08-5653, 2009 U.S. Dist. LEXIS 45474, at *10 (E.D. Pa. May 29, 2009) (quoting *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989)); *Anderson*, 287 B.R. at 628. The claims remain the property of the estate, even after the bankruptcy has been terminated and the trustee has been discharged. *Schafer*, 2009 U.S. Dist. LEXIS 45474, at *11 (citing cases). The bankruptcy laws of Equatorial Guinea are no different.

Under the Uniform Act, as adopted by Equatorial Guinea, all assets of a debtor in bankruptcy, including one that is party to an insolvency proceeding such as FEG, become part of the bankrupt's estate. Uniform Act at Part II, Chapter I, Article 25, *et seq*. The estate is under the control of a receiver, acting as trustee for the estate. Thus, "[f]or administration and disposal acts, the trustee must assist. Any administration and disposals made by the debtor without the assistance of the trustee are not effective against third parties." Jon Brooks & Adrien Rangiroa, *Bankruptcy in Francophone Africa: OHADA's Uniform Act in Theory and Practice*, 2011 WL 190738 at *4 (Jan. 2011).

As explained above, the causes of action subject to the arbitration were transferred by operation of Equatorial Guinean law to the Receiver when the insolvency proceeding was initiated. On February 22, 2007, the court declared FEG to be insolvent and ordered its assets, including its cause of action against the Government, to be distributed to its creditors. *See* Ex. G; *see* Preliminary Award at ¶ 148. On July 18, 2007, FEG appealed that decision to the Supreme Court of Justice of the Republic of Equatorial Guinea which on October 2, 2007, dismissed the

12

appeal thereby allowing the assets to be distributed in accordance with the Uniform Act. Uniform Act at Part II, Chapter I, Article 33.

When the cause of action matured into the arbitral award on December 23, 2011, it had already been transferred to FEG's creditors pursuant to the final bankruptcy court order. FEG's various Equatorial Guinean creditors are the sole entities entitled to recover any funds from the Award, and only the Receiver is their agent to institute proceedings or collect such funds. Uniform Act at Chapter II, Section II, Article 43. Therefore, when FEG sought to assign the award in January 2012 to Plaintiff, it owned nothing and assigned nothing. Since nothing was assigned, the Plaintiff lacks the requisite property interest necessary to support the first *Lujan* requirement.

## VI.   CONCLUSION

Plaintiff acquired no rights in the arbitral award from FEG. As a result, Plaintiff lacks Article III standing as a matter of law to seek to confirm the award. Absent such standing, this Court lacks subject matter jurisdiction and the Plaintiff's Motion should be dismissed.

In the alternative, the Court should stay these proceedings pending resolution of the proceedings in the Paris courts, which involve the same issues raised before this Court. Should the Receiver's Opposition be sustained by the Paris court, the Preliminary and Final Awards would be vacated, and Plaintiff would have no award to enforce.

WHEREFORE, the Republic of Equatorial Guinea asks this Court to grant its Motion to Dismiss and dismiss or stay Plaintiff's Motion to Enforce, and award Defendant any further relief, in either law or equity, to which it has shown itself entitled.

Respectfully submitted,

/s/ Gregory J. Casas
Gregory J. Casas
Texas Bar No. 00787213
S.D. Tex. Bar No. 16213
300 W. 6th Street, Suite 2050
Austin, Texas 78701
Tel: 512.320.7238
Fax: 512.320.7210

Attorney-In-Charge for Defendant
the Republic of Equatorial Guinea

OF COUNSEL:

Greenberg Traurig, LLP
Hugh E. Hackney
Texas Bar No. 08670000
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Tel: 214.665.3600
Fax: 214.665.3601

Greenberg Traurig, LLP
Robert P. Charrow
D.C. Bar No. 261958
David A. Baron
D.C. Bar No. 458930
Precious Murchison
D.C. Bar No. 983912
2101 L Street, N.W. Suite 1000
Washington, DC 20037
Tel: 202.331.3100
Fax: 202.261.0465

Attorneys for Defendant
the Republic of Equatorial Guinea

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 1, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.  I further certify that I sent by email the foregoing document and the notice of electronic filing to all non-CM/ECF participants.

                                        By:    <u>/s/ Gregory J. Casas</u>
                                                     Gregory J. Casas