IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FITZPATRICK INTERNATIONAL      §
LIMITED,                       §
                               §
        Plaintiff,             §
                               §
v.                             §        CIVIL ACTION NO. H-12-1300
                               §
THE REPUBLIC OF EQUATORIAL     §
GUINEA,                        §
                               §
        Defendant.             §

### MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Defendant's Motion to Dismiss or, in the Alternative, Motion to Stay (Doc. 27). The court has considered the motion, the response and reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motion to dismiss be **DENIED**. The court **GRANTS** the motion to stay.

### I.  Case Background

Plaintiff filed this action pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958,[2] also know as the New York Convention, ("New York Convention"), seeking confirmation of a foreign arbitral

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 20.

[2]      21 U.S.T. 2517; T.I.A.S. No. 6997.  See 1970 WL 104417.  The treaty was entered into force for the United States on Dec. 29, 1970.  See 9 U.S.C. § 201.

award in Plaintiff's favor.

In February 2004, Defendant The Republic of Equatorial Guinea ("Defendant" or "Equatorial Guinea") and Fitzpatrick Equatorial Guinea Limited ("FEG"), a company incorporated in Equatorial Guinea and majority owned by Fitzpatrick Gibraltar Limited, entered into a contract providing for the construction of a highway between the airport of Malabo and the town of Ela Nguema on the island of Bioko in Equatorial Guinea.[3]   The contract contained a provision addressing dispute resolution: "In the event of any disputes, the parties shall meet in order to reach an amicable solution. Otherwise they shall submit any disputes to the courts of Equatorial Guinea or, as a last resort, the matter shall be resolved according to the arbitration procedure of the International Chamber of Commerce [("ICC")]".[4]

A dispute arose between the parties, and FEG terminated the contract in March 2005.[5]   Equatorial Guinea objected to the termination, viewing it as a wrongful repudiation.[6]   After the parties unsuccessfully attempted to reach an amicable solution, FEG

---

[3]   Doc. 1, Pl.'s Pet. & Mot. to Confirm Arbitral Award pp. 2, 4; Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Award on Prelim. Issues ("Prelim. Award") p. 5.

[4]   Doc. 1-1, Ex. A-2 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Contract for the Constr. of the Airport-Ela Nguema Highway art. 40.

[5]   Doc. 1, Pl.'s Pet. & Mot. to Confirm Arbitral Award p. 5.

[6]   Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 5.

filed a request for arbitration with the ICC in September 2006.[7]
FEG requested CFA[8] 14,939,299,635 as contract damages, as well as
reimbursement of its legal costs and associated arbitration
expenses.[9]   Pursuant to a power of attorney and a service
agreement, FEG's management was represented by Plaintiff.[10]  In its
answer, Equatorial Guinea challenged the jurisdictional propriety
of arbitration.[11]  The ICC International Court of Arbitration set
Paris, France, as the location of the arbitration and determined
that the dispute would be heard by a three-member arbitral
tribunal.[12]

In December 2006, after receiving the request for arbitration,
Equatorial Guinea filed, without providing notice to FEG, a
petition to declare FEG insolvent.[13]  Two months later, the Malabo
Court of First Instance in Equatorial Guinea declared FEG insolvent
and appointed a receiver for the bankruptcy estate.[14]   FEG first

---

[7]     Doc. 1, Pl.'s Pet. & Mot. to Confirm Arbitral Award p. 5.

[8]     CFA (Coopération financière en Afrique central franc) is the currency
used in parts of Africa, which is guaranteed by the French treasury.

[9]     Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award,
Prelim. Award p. 6.

[10]    Id. p. 14.

[11]    Id. p. 6.

[12]    Id. pp. 6-7.

[13]    See id. p. 8; Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm
Arbitral Award, Prelim. Award pp. 15, 17, 42.

[14]    See Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award,
Prelim. Award p. 8; Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral
Award, Prelim. Award p. 15.

learned of the bankruptcy proceedings in May 2007 and, in July 2007, appealed the court order to the Supreme Court of Justice in Equatorial Guinea.[15]  The appeal was subsequently dismissed because the Court of Appeal of Equatorial Guinea, rather than the Supreme Court of Justice, was the proper court for the appeal.[16]

In July 2007, Defendant notified the arbitral tribunal about the bankruptcy decision, and the receiver sent a letter asserting that he was the only person authorized to represent FEG.[17]  Shortly thereafter, the arbitral tribunal suspended its proceedings to obtain clarification regarding FEG's standing to pursue the contract claims, as well as its representation, in arbitration.[18] The arbitral tribunal informed the parties in February 2008 that it would bifurcate preliminary issues and merits of the arbitration.[19] In March 2008, the arbitral tribunal sent the parties the finalized

---

[15]    Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 17.

[16]    Id.

[17]    Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 8.

[18]    Id. p. 9.

[19]    Id. p. 10.

Terms of Reference[20] for their signatures.[21]

In September 2008, the arbitral tribunal held a hearing on two preliminary issues: 1) the arbitral tribunal's jurisdiction over the disputes; and 2) the standing of either FEG's management or of its receiver to represent FEG's interests.[22] The arbitral tribunal issued the Award on Preliminary Issues ("Preliminary Award") in May 2009, finding in favor of FEG on both issues.[23] Regarding jurisdiction, the arbitral tribunal ruled that the dispute resolution provision in the contract "must be interpreted as providing an alternative dispute resolution mechanism under which [FEG] was entitled to bring the present arbitration proceedings and, consequently, the Arbitral Tribunal accepts jurisdiction to hear the disputes that the Parties have submitted to arbitration."[24]

Regarding the other preliminary issue, which is more significant to the dispute in the case, the arbitral tribunal characterized it as "boil[ing] down to the question whether the

---

[20]    The Terms of Reference included, amid other information, the issues to be decided by the arbitral tribunal, the arbitration schedule, and Equatorial Guinea's counterclaim (which it conditionally asserted in the event that the arbitral tribunal found that it had jurisdiction). See Doc. 1-1, Ex. A-3 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Terms of Reference pp. 17-18, 19, 24.

[21]    Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 10.

[22]    Id. p. 12; Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 28.

[23]    See Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award pp. 28-47.

[24]    Id. p. 39.

insolvency of FEG is to be recognized in these arbitration proceedings."[25]  The arbitral tribunal determined that the insolvency order could not be recognized in the arbitration proceedings because Equatorial Guinea failed to prove the institution of the insolvency proceedings was properly and timely served on FEG.[26]  Thus, it found that the receiver had no standing, and the management of FEG was the proper party to represent FEG.[27]

In February 2010, Equatorial Guinea challenged Plaintiff's authority to represent FEG's management in the arbitration.[28] Equatorial Guinea sought, also in February 2010, the annulment of the Preliminary Award by the Court of Appeal of Paris.[29]  Then, Equatorial Guinea sought a stay of the arbitration proceedings pending the decision of the Court of Appeal of Paris.[30]  The arbitral tribunal denied the request for a stay in early March

---

[25]     Id. p. 40.

[26]     Id. p. 45.  Equatorial Guinea argued before the arbitral tribunal that the insolvency proceedings had complied with all legal requirements in Equatorial Guinea.  Doc. 1-2, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 9.  The arbitral tribunal applied French law to determine whether the insolvency order could be recognized in France.  See Doc. 1-3, Ex. A-4 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Prelim. Award p. 40.

[27]     Id. p. 45.

[28]     Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 11.

[29]     Doc. 30-10, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss, 1st Witness Statement of Heloïse Herve ("Herve") p. 12.

[30]     Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 11.

2010.[31]  One week after the denial of a stay, Equatorial Guinea sued FEG and the three members of the arbitral tribunal before the President of the District Court of Paris, seeking an injunction suspending the arbitration proceedings until the Court of Appeal of Paris rendered its decision on the Preliminary Award.[32]  On March 17, 2010, Equatorial Guinea also filed a criminal complaint against FEG for fraud related to an insurance bond FEG obtained on the highway project and requested a stay of the arbitration proceedings in light of the criminal proceedings.[33]

Less that two weeks before the scheduled dates for the arbitration hearing, Equatorial Guinea changed legal representation and, through a request by the Ambassador of Equatorial Guinea in France, sought to delay the three-day hearing for at least five weeks to allow the new counsel to prepare.[34]  Meanwhile, FEG requested that the hearing be moved to London due to the prospects of arrest of FEG's witnesses and representatives in connection with the criminal proceeding.[35]  The arbitral tribunal denied both of those requests, as well as Equatorial Guinea's request to stay the arbitration pending the criminal proceedings.[36]  However, the

---

[31]   Id. p. 13.

[32]   Id. p. 14.

[33]   Id. pp. 15, 16.

[34]   Id. pp. 16-17.

[35]   Id. p. 17.

[36]   Id. pp. 17, 18.

arbitral tribunal did allow one of FEG's representatives to testify remotely via video link.[37]

The arbitral tribunal convened the hearing March 29, 2010, and concluded it on March 31, 2010.[38] On the first day of the hearing, the arbitral tribunal was informed that the President of the District Court of Paris had declined jurisdiction over Equatorial Guinea's application for an injunction to stay the arbitration pending the completion of both the proceeding to set aside the Preliminary Award and the criminal proceeding.[39]

At the parties' request after the conclusion of the arbitration hearing, the arbitral tribunal delayed issuing its decision to allow the parties time to attempt to reach an amicable settlement.[40] The receiver in the bankruptcy proceedings resigned, citing personal reasons.[41] In May 2010, Equatorial Guinea appealed to the Court of Appeal of Paris the President of the District Court of Paris's decision rejecting the application for an injunction to stay the arbitration proceedings.[42] The parties notified the arbitral tribunal in August 2010 that they were unable to reach a

---

[37]   Id. p. 19.

[38]   Id. p. 21.

[39]   Id. p. 22.

[40]   Id. p. 24.

[41]   Id.   Despite the announcement of his resignation, the receiver continued to communicate with the arbitral tribunal under the guise of a legal representative of FEG.  See id. pp. 28-29.

[42]   Id. p. 25.

8

settlement.[43]

In August 2010, Equatorial Guinea sought a court order declaring its insolvency judgment to be enforceable in France, and, in April 2011, the District Court of Paris recognized that judgment.[44]  Also in April 2011, the Court of Appeal of Paris rejected Equatorial Guinea's request to set aside the Preliminary Award.[45]  In August 2011, FEG filed a third-party challenge to the District Court of Paris's ruling on recognition of the insolvency.[46]

After multiple extensions of time for the rendering of the Final Award, the arbitral tribunal issued its decision in December 2011.[47]  The Final Award explicitly incorporated the Preliminary Award.[48]  Among other procedural and preliminary issues addressed, the arbitral tribunal found that Plaintiff was authorized, pursuant to a valid power of attorney, to represent FEG's management in the

---

[43]   Id. pp. 26-27.

[44]   Id. pp. 28-29; Doc. 27-3, Ex. C to Def.'s Mot. to Dismiss, Judgment of the District Court of Paris Dated Apr. 28, 2011; but see Doc. 30-10, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss, 1st Witness Statement of Herve p. 13 (stating that Equatorial Guinea sued the receiver assigned to FEG before the Tribunal de Grande Instance of Paris in a non-adversarial proceeding seeking recognition in France of the insolvency decision).

[45]   Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 28; Doc. 30-10, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss, 1st Witness Statement of Herve p. 12; Doc. 30-11, Ex. C to Pl.'s Resp. to Def.'s Mot. to Dismiss, Paris Ct. of App. J. Dated Apr. 7, 2011.

[46]   Doc. 30-10, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss, 1st Witness Statement of Herve p. 13.

[47]   See Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award pp. 30-31; Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 80.

[48]   Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award pp. 7-8.

arbitration.[49]

As to the merits, the two issues addressed were whether Equatorial Guinea was in breach of the contract, allowing FEG to terminate it on that basis, and whether and in what amount FEG was entitled to damages for breach.[50]  The arbitral tribunal concluded that Equatorial Guinea breached the contract by failing to timely make three payments and that FEG was entitled to terminate the contract on March 14, 2005.[51] The arbitral tribunal awarded FEG the sum of €12,278,958.95 for lost profits as a result of the termination, plus interest, costs and expenses of arbitration.[52]

On January 7, 2012, FEG "assign[ed] all its rights, title, interest, and benefit in and to the Award and any financial or beneficial entitlement arising from or in connection with it, to [Plaintiff] whether vested in it on the date of this Deed or arising at any time thereafter."[53] Also in January 2012, Equatorial Guinea filed an application with the Court of Appeal of Paris to set aside the Final Award, claiming that FEG lacked standing to

---

[49]     Doc. 1-5, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 49.

[50]     Id. p. 50.  The ICC ruled that Equatorial Guinea's counterclaim was considered withdrawn due to its failure to pay the balance of the arbitration costs by the deadline.  See Doc. 1-4, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 28.

[51]     Doc. 1-5, Ex. A-5 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Final Award p. 64.

[52]     Id. pp. 78, 79.

[53]     Doc. 1-5, Ex. A-6 to Pl.'s Pet. & Mot. to Confirm Arbitral Award, Deed of Assignment of an Arbitral Award p. 1.

bring the claims in arbitration, and the receiver separately filed a third-party opposition to the Court of Appeal of Paris's order upholding the Preliminary Award, also claiming that FEG lacked standing to bring claims against Equatorial Guinea.[54]

Plaintiff subsequently sought to enforce the Final Award in England pursuant to the New York Convention.[55]   The High Court of Justice Queen's Bench Division in London granted Plaintiff's motion to enforce the Final Award.[56]

Plaintiff filed its complaint pursuant to the New York Convention before this court on April 24, 2012, seeking a court order confirming and recognizing the Final Award and entering judgment in favor of Plaintiff against Equatorial Guinea in the amount of the Final Award plus interest and costs.[57]   Plaintiff sought and received this court's assistance in serving Defendant.[58]

---

[54]   See Doc. 27, Def.'s Mot. to Dismiss p. 7; Doc. 27-4, Ex. D to Def.'s Mot. to Dismiss, Appeal Pleadings pp. 2, 5, 7; Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 8 nn.6, 7.   According to Plaintiff's brief, a hearing (or, possibly, hearings) on the merits of both was set for September 26, 2013.   Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 8 nn.6, 7.   According to Defendant's brief, filed over a month earlier than Plaintiff's response, the hearing on the receiver's opposition to the Preliminary Award was scheduled for June 2013.   Doc. 27, Def.'s Mot. to Dismiss p. 8.

[55]   See Doc. 30-10, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss, 1st Witness Statement of Herve.

[56]   See Doc. 30-12, Ex. D to Pl.'s Resp. to Def.'s Mot. to Dismiss, High Ct. of J. Order Dated Jan. 20, 2012; Doc. 30-14, Ex. F to Pl.'s Resp. to Def.'s Mot. to Dismiss, High Ct. of J. Order Dated July 12, 2012.

[57]   Doc. 1, Pl.'s Pet. & Mot. to Confirm Arbitral Award, p. 1.

[58]   See Doc. 7, Pl.'s Request for Judicial Assistance; Doc. 10, Order Dated July 5, 2012.   Defendant asserts that the method of delivery "likely" did not constitute service but "is willing to deem the delivery as proper service" to avoid "wasting the parties' and the Court's resources for a correct[a]ble defect."   Doc. 27, Def.'s Mot. to Dismiss p. 1.

11

In December 2012, the District Court of Paris entered an order recognizing the withdrawal of claims in FEG's third-party challenge to the District Court of Paris's ruling on the recognition of the insolvency order pending the decision of the Court of Appeal of Paris regarding the receiver's opposition to the Preliminary Award.[59]   The District Court of Paris removed the proceeding from its cause list.[60]

Before this court, Defendant sought additional time to file an answer and, ultimately, in lieu of filing an answer, filed the pending motion to dismiss.[61]   Defendant challenges the court's jurisdiction to hear the case under Article III to the U.S. Constitution.[62]   Plaintiff responded, and Defendant replied, both receiving brief extensions of time on their briefs.[63]

## II.   Dismissal Standard for Lack of Standing

"Federal courts are courts of limited jurisdiction" and may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes.   Kokkonen v.

---

[59]   See Doc. 27-7, Ex. G to Def.'s Mot. to Dismiss, Order of Withdrawal from the Cause List Dated Dec. 12, 2012.

[60]   Id. (allowing a procedure for reinstating the case).

[61]   See Doc. 18, Def.'s Mot. for Extension of Time; Doc. 19, Order Dated Jan. 17, 2013; Doc. 24, Agreed Mot. for Extension of Time; Doc. 26, Order Dated Feb. 15, 2013; Doc. 27, Def.'s Mot. to Dismiss.

[62]   See Doc. 27, Def.'s Mot. to Dismiss.

[63]   See Doc. 28, Agreed Mot. for Extension of Time; Doc. 29, Order Dated Apr. 15, 2013; Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss; Doc. 31, Agreed Mot. for Extension of Time; Doc. 32, Order Dated May 10, 2013; Doc. 33, Def.'s Reply.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also
Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).  The
court's jurisdiction covers only actual cases or controversies, and
standing is an element of the case-or-controversy requirement.
U.S. Const. art. III § 2; Lujan v. Defenders of Wildlife, 504 U.S.
555, 560 (1992); see also McCall v. Dretke, 390 F.3d 358, 361 (5th
Cir. 2004)(explaining that standing is an essential component of
federal subject matter jurisdiction).    To have standing, a
plaintiff must have suffered "an injury that is concrete,
particularized, and actual or imminent; fairly traceable to the
defendant's challenged behavior; and likely to be redressed by a
favorable ruling."  Davis v. Fed. Election Comm'n, 554 U.S. 724,
733 (2008)(citing Lujan, 504 U.S. at 560-61).

     Pursuant to the federal rules, dismissal of an action is
appropriate whenever the court lacks subject matter jurisdiction.
Fed. R. Civ. P. 12(b)(1); 12(h)(3).    The party asserting
jurisdiction bears the burden of overcoming the presumption that
the cause falls outside the court's limited jurisdiction.
Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919.

### III. Analysis

     Defendant moves to dismiss this action based on the argument
that Plaintiff cannot meet the first requirement for Article III
standing because it does not have a legally cognizable interest in
the Final Award insofar as all of FEG's assets, including its

contract claim against Equatorial Guinea, became part of the bankruptcy estate when FEG was declared insolvent in Equatorial Guinea.  Therefore, Defendant contends, FEG had nothing to assign to Plaintiff.  Alternatively, Defendant seeks a stay in this action pending the resolution of the proceedings in the Paris courts, "which involve the same issues raised before this Court."[64]

Plaintiff responds that it filed the action pursuant to the New York Convention and Defendant is attempting to "'end run' the limited review provisions of the New York Convention" with its standing argument.[65]  Because the standing issue was litigated before the arbitral tribunal, Plaintiff argues, this court is prohibited by the New York Convention from reviewing the arbitral tribunal decision on that issue.  Plaintiff also contends that a stay should be denied because Defendant failed to satisfy the criteria outlined by the New York Convention to justify a stay.

**A.   The New York Convention**

The New York Convention is a U.S. treaty that "provides a carefully structured framework for the review and enforcement of international arbitral awards." 1st Inv. Corp. of the Marsh. Is. v. Fujian Mawei Shipbuilding, Ltd., 703 F.3d 742, 748 (5th Cir. 2013)(quoting Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (hereinafter Karaha Bodas Co. II), 364 F.3d

---

[64]   Doc. 27, Def.'s Mot. to Dismiss p. 13.

[65]   Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 1.

14

274, 287 (5th Cir. 2004)); <u>see also</u> N.Y. Convention, art. I, 1970
WL 104417, at *1; <u>Gulf Petro Trading Co. v. Nigerian Nat'l Petro.
Corp.</u>, 512 F.3d 742, 746 (5th Cir. 2008)(stating that the treaty's
"'essential purpose' relates to the recognition and enforcement of
foreign arbitral awards"). Chapter two of the Federal Arbitration
Act ("FAA") is the implementing legislation that directs U.S.
courts to enforce the treaty. <u>See</u> 9 U.S.C. § 201 (stating that the
treaty "shall be enforced in United States courts").

The treaty's underlying purpose is recognizing the "autonomy
of international arbitration." <u>Gulf Petro Trading Co.</u>, 512 F.3d at
746 (quoting <u>Fouchard, Gaillard, Goldman on International
Commercial Arbitration</u> § 250 (Emmanuel Gaillard & John Savage,
eds., 1999)). The New York Convention and the FAA grant federal
district courts subject matter jurisdiction over actions brought
pursuant to the treaty's provisions but only to the extent provided
therein. <u>See</u> 1st <u>Inv. Corp. of the Marsh. Is.</u>, 703 F.3d at 750
(citing <u>Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum
Factory"</u>, 283 F.3d 208, 212 (4th Cir. 2002)); <u>Gulf Petro Trading
Co.</u>, 512 F.3d at 746-47.

Regarding recognition and enforcement of foreign awards, the
treaty states, "Each Contracting State shall recognize arbitral
awards as binding and enforce them in accordance with the rules of
procedure of the territory where the award is relied upon, under
the conditions laid down in the following articles." N.Y.

15

Convention, art. III, 1970 WL 104417, at *1. Within three years of the issuance of an arbitral award subject to the New York Convention, "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The FAA directs the court to confirm and enforce the award unless one of the grounds for refusal or deferral listed in the treaty applies. Id.; Karaha Bodas Co. II, 364 F.3d at 288.

Article V of the treaty lists the reasons based upon which a court may refuse recognition and enforcement of an award. See N.Y. Convention, art. V, 1970 WL 104417, at *2. To be successful in challenging the recognition and enforcement of a foreign arbitral award, an opposing party must offer proof of one or more of the exclusive defenses: incapacity of the parties or invalidity of the award; lack of notice or opportunity to participate in the arbitration proceedings; inclusion of decisions on matters beyond the scope of the arbitration agreement; improper procedure or composition of the arbitral authority; and/or lack of finality of the award or annulment of the award in the country where it was made. Id. Recognition and enforcement may also be refused if the country where recognition and enforcement are sought finds that the subject matter is not capable of settlement by arbitration under its laws or recognition and enforcement would be contrary to its public policy. Id.

Only courts in the countries in which awards were made have primary jurisdiction and are not restricted in their review of those awards. 1st Inv. Corp. of Marsh. Is., 703 F.3d at 748 (quoting Gulf Petro Trading Co., 512 F.3d at 746). In other words, only courts with primary jurisdiction can set aside, vacate, annul, or modify an arbitral award. Gulf Petro Trading Co., 512 F.3d at 746; Karaha Bodas Co. II, 364 F.3d at 287.

Courts in any other signatory country are significantly limited in their review of arbitral awards; essentially, they can only decide whether to enforce the award in their own country. Gulf Petro Trading Co., 512 F.3d at 746 (quoting Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (hereinafter Karaha Bodas Co. I), 335 F.3d 357, 364 (5th Cir. 2003). "While courts of a primary jurisdiction country may apply their own domestic law in evaluating a request to annul or set aside an arbitral award, courts in countries of secondary jurisdiction may refuse enforcement only on the grounds specified in Article V." Karaha Bodas Co. II, 364 F.3d at 288; see also 1st Inv. Corp. of the Marsh. Is., 703 F.3d at 748; Gulf Petro Trading Co., 512 F.3d at 747. In fact, a court in a country of secondary jurisdiction "lacks subject matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award." Gulf Petro Trading Co., 512 F.3d at 747; see also Karaha Bodas Co. II, 364 F.3d at 288 (stating that court with secondary jurisdiction cannot reconsider

the arbitrator's findings, absent extraordinary circumstances).
The burden of proof lies with the party challenging enforcement.
Karaha Bodas Co. II, 364 F.3d at 288.

If an application to set aside or suspend the award has been
made to a competent authority in the country where the award was
made, this court may, "if it considers it proper, adjourn the
decision on the enforcement of the award and may also, on the
application of the party claiming enforcement of the award, order
the other party to give suitable security." N.Y. Convention, art.
VI, 1970 WL 104417, at *2.

B.  **Discussion**

Defendant does not argue against enforcement of the Final
Award based on any reason enumerated in the New York Convention.[66]
Rather, Defendant ignores the New York Convention altogether and
frames its question as one of standing, challenging only whether
Plaintiff has a legally cognizable interest in the Final Award.
The basis for its argument in this regard is that the insolvency
proceedings in Equatorial Guinea extinguished FEG's legal claim
before the arbitral tribunal reached its decision.

Regardless of Defendant's approach, the Final Award, which was
made in France pursuant to an arbitration, clearly falls within the
scope of the New York Convention.  Cf. Gulf Petro Trading Co., 512

---

[66]     Because Defendant argues none of the listed reasons for refusing to
recognize or enforce the Final Award, the court is left to assume, for purposes
of the pending motion, that none applies.  That assumption has no bearing on the
court's ruling.

F.3d at 746 (finding that the award in that case, which was made in Switzerland, was within the scope of the New York Convention).  The very issue raised by Defendant was decided by the arbitral tribunal when it determined that FEG's management, not the receiver, had standing to pursue FEG's claims in arbitration.  The Preliminary Award specifically found that the bankruptcy proceedings could not be recognized in the arbitration proceedings due to service flaws. Pursuant to the arbitral tribunal's determination, FEG exercised its right to the legal claim through arbitration and, ultimately, received a favorable award.

Nothing in either the Preliminary or Final Award indicates that FEG would not own the arbitral award.  Moreover, as of the date of this decision, the courts in France, which are free to set aside the awards, have not done so.  In fact, the decisions of the French courts that have reviewed the Preliminary Award support the arbitral tribunal's determination.

Defendant would prefer that this court disregard the arbitral tribunal's decision and find, under U.S. law and the law of Equatorial Guinea, that the insolvency proceedings stripped FEG of its legal claim and deprived it of rights to the Final Award.  This court simply does not have subject matter jurisdiction to review the arbitral tribunal's insolvency decision.  <u>See</u> <u>Gulf Petro Trading Co.</u>, 512 F.3d at 746-47.  This court's subject matter jurisdiction extends only as far as provided by the New York

Convention, which does not allow review of decisions made in foreign arbitration but, rather, directs the court to enforce the award unless one of the grounds specified in the treaty applies to support refusing recognition and enforcement.  See id. (quoting Karaha Bodas I, 335 F.3d at 364, 368).

This court sits with limited jurisdiction and must accept the arbitral determination that the insolvency proceedings in Equatorial Guinea were not effective and did not deprive FEG of its rights to the arbitration award.[67]  That determination undermines Defendant's entire argument.  Although presented as an issue of standing, the argument is premised on a supposition directly contrary to the finding of the arbitral tribunal.  A ruling in Defendant's favor would require this court to vacate or, at the very least, to modify the Final Award.[68]

FEG had standing because the arbitral tribunal determined that

_____

[67]     Defendant argues, in its reply, that "the act of state doctrine prohibits this court from passing judgment on the validity of [the bankruptcy] proceedings."  Doc. 33, Def.'s Reply p. 1.  The act of state doctrine precludes courts in one country from judging another country's territorial acts of government.  Spectrum Stores, Inc. v. Citgo Petro. Corp., 632 F.3d 938, 954 (5th Cir.), cert. denied, ___ U.S. ___, 132 S. Ct. 366, & sub nom. Fast Break Foods LLC v. Saudi Arabian Oil Co., ___ U.S. ___, 132 S. Ct. 367 (2011).  The court here does not pass judgment on the validity of the bankruptcy; the arbitral tribunal did.  This court simply honors the decision as it must within the confines of its circumscribed jurisdiction.

[68]     In its reply, Defendant contends that the New York Convention cannot trump the U.S. Constitution's standing requirements.  Defendant's underlying argument regarding standing is one that it might have asserted if FEG had brought its contract claims against Defendant in the United States originally.  That is not the issue here; rather, the issue is whether Plaintiff has standing to seek enforcement of a valid arbitral award.  To resolve that issue, the court need not choose between enforcing the New York Convention or the Constitution, as they are consistent.  The court is prohibited from looking behind the award.  As explained in this memorandum, Plaintiff has standing to seek enforcement of the Final Award.

it did.[69]  Plaintiff has standing because it is the assignee of the award from FEG.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that the motion to dismiss be **DENIED**.

In the concluding remarks of its motion, Defendant alternatively requested a stay of these proceedings pending resolution of the challenges before the Paris courts.  Defendant cited no legal support but noted that a decision in favor of the receiver would lead to vacating the Final Award.[70]

As cited above, the New York Convention allows a court to stay a proceeding to enforce an arbitral award when an application to set aside or suspend an award is pending in the courts of the country where the award originated.  This is precisely the case

---

[69]    Defendant argues, in its reply, that the express language of the FAA dictates that only a party to the arbitration may seek to have the arbitral award recognized and enforced.  Defendant relies on the plain language and points to legal authority defining "party" but ignores common legal principles allowing the assignment of transferable property interests.  See Int'l Transactions Ltd. v. Embotelladora Agral Regiomontana S.A. de C.V., Civil Action No. 3:01-CV-1140-G ECF, 2006 WL 2217478, at *5 (N.D. Tex. Aug. 3, 2006)(unpublished)(recognizing arbitration awards as transferable property interests and finding that the assignment of an arbitration award includes the legal right to seek confirmation of the award).  In the absence of citation to any legal authority disallowing an assignee of a foreign arbitral award from seeking recognition and enforcement pursuant to the New York Convention, the court finds this argument unconvincing.

[70]    In its reply, Defendant argues that the court has the inherent authority to stay the action in order to efficiently manage its docket.  The court finds that Defendant's request falls under the New York Convention, not the court's inherent authority.

here, and both parties concede as much.[71]  Even so, Plaintiff argues that Defendant's "informal request alone is not enough to obtain a stay under the New York Convention."[72]

Article VI of the New York Convention grants the court the power to impose a stay if the courts in the country of origin are in the process of reconsidering the arbitral award.  See N.Y. Convention, art. VI, 1970 WL 104417, at *2.  No requirements or burdens are placed on a requesting party.  See id.  The court, therefore, considers the decision to be a matter of discretion.

In order to avoid inconsistent results from enforcing an arbitral award that remains under review before courts with primary jurisdiction, the court finds it prudent to stay this case until the Paris courts render their decisions.  It appears from the parties' briefs that hearings in Paris have occurred already;[73] perhaps, then, the stay will not be of great duration.[74]

---

[71]  See Doc. 27, Def.'s Mot. to Dismiss p. 4 (stating that the receiver's challenge to the Preliminary Award and Equatorial Guinea's challenge to the Final Award are both based on the theory that "FEG had no authority to bring the arbitration in the first place due to its insolvency." ); Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 14 (stating that"[u]nder Article VI of the New York Convention, if an arbitral award has been challenged in a court of primary jurisdiction (which has occurred here) . . . ."). Defendant changed its position in its reply, stating, "As much as the Plaintiff might wish otherwise, the issue before the arbitral panel in France is not the same as the issue before this Court—factually, legally, or otherwise." Doc. 33, Def.'s Reply p. 6.

[72]  Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 14.

[73]  Doc. 27, Def.'s Mot. to Dismiss p. 8; Doc. 30, Pl.'s Resp. to Def.'s Mot. to Dismiss p. 8 nn.6, 7.

[74]  Plaintiff briefs Article VI's authorization to require suitable security in the case of a stay. However, the court finds absent from Plaintiff's discussion any reason that security is necessary in this case or, frankly, any request for security.  The results of the proceedings pending before the Paris courts directly affect whether this court should enforce the arbitral award. The

The court **GRANTS** Defendant's motion to stay.  The court **ORDERS** the parties to file a joint status report sixty days from the date of this order and every sixty days thereafter.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>7th</u> day of October, 2013.

Nancy K. Johnson
United States Magistrate Judge

---

court finds security unnecessary.